# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| ROBERT LEIMKUEHLER, as Trustee of and on behalf of LEIMKUEHLER, INC. PROFIT SHARING PLAN, and on behalf of all others similarly situated, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:10-cv-333-JMS-TAB |
| | ) | |
| vs. | ) | |
| | ) | |
| AMERICAN UNITED LIFE INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO AUL'S MOTION FOR JUDGMENT ON THE PLEADINGS

AUL advances three discrete propositions and focuses on a single case in support of its contention it is entitled to judgment as a matter of law on all counts of the Trustee's Complaint. AUL first contends that *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), broadly holds that a practice known as "revenue sharing" never violates ERISA. Second, AUL cites *Hecker* for the proposition that a retirement plan provider never has any duty to disclose to anyone that it takes revenue sharing payments, at least so long as the total fees (*i.e.*, expense ratio) for each investment option is disclosed. Third, AUL contends that the revenue sharing payments it takes do not come from "plan assets," and that AUL's receipt of revenue sharing payments therefore do not constitute "prohibited transactions" under ERISA. Doc. 48 (AUL's Memorandum) at 1-2.

AUL's characterizations of the Trustee's claims, however, are wrong, and so is AUL's reading of *Hecker*. First, the Trustee makes no claim that revenue sharing is *per se* unlawful or even that revenue sharing by a fiduciary (as opposed to non-fiduciaries like the Fidelity entities in *Hecker*) is always unlawful. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 600 (8th Cir. 2009) (agreeing "there may be no *per se* duty to disclose" revenue sharing but reversing district

court's dismissal for failure to state claims of breach of fiduciary duty and prohibited transactions).

Rather, the Trustee's claim is that revenue sharing the way AUL does it – without full disclosure to plan fiduciaries, without crediting the revenue to the plans, and without any limit to the amount of fee AUL can earn – violates ERISA. Alternatively, the Trustee has pled that AUL is a party to a prohibited transaction for which it may be held liable as a non-fiduciary. The Seventh Circuit's decision in *Hecker* does not foreclose any of those claims.

Just as the Trustee does not contend that revenue sharing always violates ERISA, *Hecker* does not hold that revenue sharing never violates ERISA. In fact, far from such a blanket endorsement of all 401(k) revenue sharing, the Seventh Circuit merely concluded that the revenue sharing arrangement alleged there, between two *non*-fiduciaries, did not violate ERISA. *Hecker* offers no support whatsoever for the proposition that revenue sharing by an ERISA fiduciary is lawful, much less does it explain under what circumstances it might be lawful.

Likewise, *Hecker* did not hold that a plan service provider like AUL never has any duty to disclose revenue sharing amounts to plan fiduciaries who are statutorily charged with the fiduciary duty of ensuring the reasonableness of a plan provider's fees. Instead, *Hecker* held that a *plan sponsor* (like Deere in *Hecker* or Leimkuehler, Inc., in the present case) has no duty to disclose revenue sharing amounts to *plan participants*. As *Hecker* explained, plan participants only need to know a fund's expense ratio – the cost of investing in that fund – in order to make a decision whether to invest in that fund or some other fund with a lower cost (*i.e.*, a lower expense ratio).

Plan sponsors are faced with an entirely different consideration with respect to the fees of service providers. Unlike participants, plan sponsors must determine whether each such

provider's fees are reasonable. This is why plan providers must disclose adequate information about their fees to plan sponsors, even when they are not required to disclose that same information to plan participants.

Finally, whether the revenue sharing payments constitute "prohibited transactions" turns, at least in part, on the factual question regarding the source of those payments. AUL's arguments, regarding the source of the payments (insisting that they all come from mutual funds and not from separate accounts), depend on a contradiction of the allegations of the Complaint. For that reason alone, AUL's arguments are improper on a motion for judgment on the pleadings and, coming before any discovery about the sources of the payments, is premature.

For these and other reasons more fully discussed below, AUL's motion for judgment on the pleadings should be denied.

## <u>NATURE OF THE CASE</u>

Leimkuehler, Inc., is a company with its principal place of business in Cleveland, Ohio. Doc. 1 (Complaint) ¶ 1. It is the sponsor of the Leimkuehler, Inc. Profit Sharing Plan, a 401(k) retirement plan for the employees of Leimkuehler, Inc. *Id*. ¶ 2. Plaintiff Robert Leimkuehler is a trustee of the Leimkuehler Plan, and he brought this lawsuit in that capacity, on behalf of the Plan, against AUL. *Id*. ¶ 1.

AUL is a retirement plan service provider offering "full service" 401(k) retirement plans to employers who wish to provide retirement plans for their employees. *Id*. ¶ 6. AUL offers complete plan management services, so "plan sponsors don't need to have all the answers, just our phone number to give to their participants." *Id*. ¶ 8.

From thousands of available mutual funds, AUL negotiates agreements with a much smaller, hand-picked group of mutual funds, which includes AUL's own or AUL-affiliated funds. *Id*.

¶¶ 9-10. These funds are the only funds AUL offers as investment options to its 401(k) plan clients. *Id*. ¶ 9. From that stable of funds, AUL selects and presents to an employer an even smaller menu of mutual funds – a fraction of the total investment options AUL has available to offer (which in turn is only a fraction of all mutual funds that exist) – from which the employer must choose for its 401(k) plan. *Id*. ¶¶ 12-13. AUL, however, selects the share class of each fund the employer selects for inclusion in its plan. *Id*. at ¶ 14. AUL retains the discretion to delete investment options, close them to future investments, or to substitute other funds for those an employer has chosen, and AUL may do so without the employer's consent. *Id*. ¶ 17. AUL thus exercises ultimate control over the investment options made available to the plans it serves. *Id*. ¶ 18.

Employees who participate in the 401(k) plan then select investment options from the menu of investment options already jointly pre-selected by AUL and the employer. *Id*. ¶ 16. "When participants in 401(k) plans served by AUL make an investment, they do not purchase shares of mutual funds; instead, they purchase 'accumulation units' in … separate accounts, and the separate accounts then invest in mutual funds." AUL Memorandum (Doc. 48) at 8. "Assets held in a separate account are considered plan assets under ERISA. *See* 29 C.F.R. § 2510.3-101(h)(1)." *Id*. at 8.

Because it serves a large number of retirement plans, AUL can direct an extremely large amount of retirement plan assets to mutual funds, which the funds are eager to tap into. Complaint ¶ 22. As a result, AUL is able to exact "revenue sharing" deals with mutual funds, pursuant to which the mutual funds effectively agree to take a reduced fee for their services and to share the rest of their usual fees with AUL. *Id*. ¶ 23-24. Mutual funds agree to make the revenue sharing payments to AUL in exchange for being included among the stable of

investment options AUL has available to offer to its 401(k) plan clients. *Id*. ¶ 20. With very few

exceptions (if any), AUL only includes in that stable those mutual funds that agree to share

revenue. *Id*. ¶ 21.

AUL provides no additional services in consideration for the revenue sharing fees it takes. *Id*.

¶ 56. The revenue sharing fees are thus windfalls to AUL that serve only to increase its income at

the expense of 401(k) plans and their participants. *Id*. ¶ 57. AUL does not disclose, or does not

adequately disclose, to 401(k) plans that AUL negotiates or takes revenue sharing payments, and

it does not disclose, or adequately disclose, the amount of those payments. *Id*. ¶¶ 54-55. *See*, *e.g.*,

AUL's Exhibits A, B and C. Worse still, AUL and the mutual funds falsely represent to 401(k)

plans that the mutual funds' fees are the funds' usual and customary fees, when in fact, the fees

the funds collect include *both* their reduced fees *and* the revenue sharing components which they

collect strictly for the benefit of AUL. *Id*. ¶¶ 23-24. AUL and the mutual funds misrepresent the

funds' fees as being more than they actually are, in order to hide the revenue sharing

components. *Id*. ¶ 25.

AUL does not give 401(k) plans any offset for the revenue sharing payments against the fees

the 401(k) plans owe AUL, nor does AUL credit any of the revenue sharing to the 401(k) plans.

*Id*. ¶ 27. AUL instead keeps the revenue sharing payments for its own benefit. *Id*. ¶ 26.

## **STANDARD OF REVIEW**

"A motion for judgment on the pleadings is reviewed under the same standard as a Rule

12(b)(6) motion to dismiss." *Wilson v. AT&T Inc.*, 2010 WL 987737 at *1 (S.D. Ind. Mar. 12,

2010) (Barker, J.) (citing *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007)). "A

plaintiff need not prove her case in the complaint, but the complaint must support a claim beyond

simple conjecture that the plaintiff is entitled to relief." *Id*. (citing *Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544, 570 (2007)). "[T]he changes that *Twombly* and its progeny have brought to the standard of review for Rule 12 motions have not changed the liberal notice pleading standard of the federal rules." *Id*. at *5. "Even after *Twombly,* courts must still approach motions under Rule 12(b)(6) by 'constru[ing] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor.'" *Hecker,* 556 F.3d at 580.

## ARGUMENT

**I.** ***Hecker* does not hold that revenue sharing practices never violate ERISA, nor does *Hecker* hold that a plan service provider need not disclose its revenue sharing practices to the plan fiduciaries responsible for ensuring that fees charged to the plans are reasonable.**

### A. The *Hecker* decision

AUL contends that the Seventh Circuit's decision in *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), broadly stands for the propositions "(a) revenue sharing – a ubiquitous practice in the 401(k) world – does not violate ERISA, (b) revenue sharing need not be disclosed as long as the total fee, or 'expense ratio,' is disclosed, and (c) the money used to make revenue sharing payments are not assets of the 401(k) plan." The holding of *Hecker* is nowhere near so broad, however, and in any event, *Hecker* is distinguishable from the present case on several grounds.

To begin with, the party alignment in *Hecker* is significantly different. As a result, *Hecker* and this case present very different legal issues. In *Hecker*, employees sued their employer, Deere & Co. (the plan trustee), Fidelity Trust, and the advisor to the Fidelity mutual funds. 556 F.3d at 578. Here, by contrast, Leimkuehler, Inc., is the employer but not a party to the litigation, and the Leimkuehler Plan's Trustee, Robert Leimkuehler, brought this suit against AUL in his capacity as trustee of the Plan. FAC at ¶ 1. These distinctions, as will be seen, are critical.

Although Deere did "not contest the fact that it owed some fiduciary duties to the plan participants," the Fidelity defendants "argue[d] that they were not fiduciaries at all." *Hecker*, 556 F.3d at 583. It was on this issue – fiduciary status – that *Hecker* affirmed the dismissal of the claims against the Fidelity defendants. "We conclude that the Complaint fails to state a claim against either Fidelity Trust or Fidelity Research based on the supposition that either one is a 'functional fiduciary.' Plaintiffs' effort to proceed against these companies thus fails at the threshold." *Id*. at 584.

The court immediately turned to the claims against the employer, Deere, and addressed the employees' claims that their employer had an ERISA duty to disclose revenue sharing to them. "We are thus left with the claims against Deere … [that] Deere breached its fiduciary duty by not informing the participants that Fidelity Trust received money from the fees collected by Fidelity Research …." 556 F.3d at 584. Thus, having already concluded that the Fidelity defendants were not fiduciaries, *Hecker* certainly did not discuss whether the Fidelity defendants, if they *had* been fiduciaries, would have had any duty to disclose revenue sharing practices and amounts to the employer (or other plan fiduciaries) responsible for ensuring the reasonableness of fees charged to the plans. In fact, throughout the opinion, the court seems to have assumed the employer knew of the revenue sharing because the plaintiffs had accused Deere of breaching its fiduciary duties by failing to disclose the Fidelity revenue sharing arrangement to them.

"Before such a [breach of fiduciary duty] can be found, there must be either an intentionally misleading statement or a material omission. The Complaint does not allege … an intentional misrepresentation. … The only question is thus whether the omission of information about the revenue-sharing arrangement is material." *Hecker*, 556 F.3d at 585-86 (citations omitted). The Seventh Circuit concluded that such information is not material to the employees.

> Deere disclosed to the participants the total fees for the funds and directed the
> participants to the fund prospectuses for information about the fund-level expenses.
> This was enough. The total fee, not the internal, post-collection distribution of the fee, is
> the critical figure for someone interested in the cost of including a certain investment in
> her portfolio and the net value of that investment. ... The later distribution of the fees
> by Fidelity Research is not information the participants needed to know to keep from
> acting to their detriment.

*Id*. at 586. Thus, the holdings of *Hecker* are far more limited than AUL portrays them, and those

holdings do not entitle AUL to judgment here.

In this same vein, AUL cites *Ruppert v. Principal Life Ins. Co.*, No. 4:07-CV-00344-JAJ-

TJS, 2009 WL 5667708, at *13-14 (S.D. Iowa Nov. 5, 2009), *reconsideration granted in part*,

slip op. (S.D. Iowa Mar. 30, 2010), as support for the proposition "that the only fee that matters

is the total fee deducted from the mutual fund – the expense ratio – and not the 'post-collection

distribution of the fee.'" Doc. 48 at 6. What AUL fails to tell the Court, however, is that in its

March 30, 2010 reconsideration order, the *Ruppert* court reversed its November 5 entry of

judgment on the pleadings with respect to the exact same kinds of revenue sharing claims at

issue here:  revenue sharing related to separate account investments. Ex. 1 (slip copy of *Ruppert*

*v. Principal Life Ins. Co.*, No. 4:07-CV-00344-JAJ-TJS, (S.D. Iowa Mar. 30, 2010) (reinstating

in part ERISA revenue sharing claims on which judgment on the pleadings had been granted)).

In its November 5 ruling, the *Ruppert* court had bought the very same *Hecker* arguments

advanced here and advanced by some of the very same attorneys. (Some of the Trustee's

attorneys are also counsel for the trustee in *Ruppert*.)

**B.  Unlike *Hecker*, this case involves AUL's duty to disclose revenue sharing to the
Trustee, a plan fiduciary.**

In this case, unlike *Hecker*, the duty to disclose is not limited to AUL's duty to disclose

revenue sharing to employee-participants. More broadly, what is at stake in this case is a

fiduciary's duty to disclose its revenue sharing practices to other fiduciaries of the plan. While

"the internal, post-collection distribution" of fees may not matter to the employee "interested in the cost of including a certain investment in her portfolio," it is absolutely critical for a plan fiduciary, like the Trustee, to know who is charging fees to the Plan, how much is being charged, and whether the charges are being correctly calculated and applied.

The Trustee has an ERISA-imposed fiduciary duty to ensure that fees charged to the Plan are reasonable, a duty he obviously cannot carry out without knowing who is charging fees and how much is being charged to the Plan. *See* 29 U.S.C. § 1104(a)(1)(A)(ii) & (B) ("a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) ***defraying reasonable expenses of administering the plan***"; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims") (emphasis added); § 1108(b)(2) (permitting "[c]ontracting or making reasonable arrangements with a party in interest for … legal, accounting, or ***other services necessary for the establishment or operation of the plan***, ***if no more than reasonable compensation is paid therefor***"). (A "party in interest" includes "a person providing services to such plan." 29 U.S.C. § 1002(14)(B).)

> [T]he responsible Plan ***fiduciaries must assure that the compensation paid directly or indirectly*** by the Plan to [the plan provider] ***is reasonable***, taking into account the trustee services provided to the Plan as well as any other fees or compensation received by [the plan provider] in connection with the investment of Plan assets. In this connection, it is the view of the Department that ***the responsible Plan fiduciaries must obtain sufficient information regarding any fees or other compensation*** that [the plan provider] receives with respect to the Plan's investments in each mutual fund ***to make an informed decision whether*** [the plan provider's] ***compensation for services is no more than reasonable***. The Plan ***fiduciaries also must periodically monitor*** the actions taken by [the plan provider] in the performance of its duties, ***to assure, among other things, that any fee offsets to which the Plan is entitled are correctly calculated and applied***.

Department of Labor Opinion No. 97-15A, 1997 WL 277980 *4 (emphases added). The fact that providers' fees may seem reasonable in the aggregate does not help the plan sponsor determine whether each provider's fees are reasonable; disclosure of the total fees of multiple providers can mask the unreasonableness of individual fees.

Thus, AUL must at a minimum disclose its revenue sharing practices (and amounts) to the plan fiduciary, who is responsible for ensuring that fees charged to the plan are reasonable and correctly calculated and applied. If AUL has no duty to disclose its revenue sharing practices and the amounts of the revenue sharing payments it takes, the Trustee has no way of discharging ***his*** fiduciary duties.

*Hecker* does not address or even mention whether a provider must disclose its revenue sharing fees to plan fiduciaries responsible for ensuring the reasonableness of fees charged to the plan. Although *Hecker* rejected the employees' claim that anyone owed ***them*** a duty to disclose revenue sharing fees, *Hecker* did not hold, address, or imply that Fidelity owed no duty to disclose revenue sharing fees to a plan trustee or other plan fiduciary charged with ensuring the reasonableness of fees. Consequently, AUL is simply not entitled to judgment on the pleadings in this case involving a service provider's duty to disclose revenue sharing fees.

**II.  AUL has not challenged the sufficiency of the Trustee's allegations of AUL's fiduciary status, and those allegations, coupled with the allegations of AUL's revenue sharing practices, state viable claims for breach of fiduciary duty and prohibited transactions under ERISA.**

*Hecker*'s holding that Fidelity was not an ERISA fiduciary makes it all the more telling that AUL has not relied on or cited *Hecker* as support for the proposition that AUL is not an ERISA fiduciary. *Hecker* does not address whether or under what circumstances a provider *who is a fiduciary* must disclose its revenue sharing fees to other plan fiduciaries responsible for ensuring the reasonableness of fees charged to the plan. Thus, in addition to the reasons already discussed

above, *Hecker* does not entitle AUL, whom the Trustee has sufficiently alleged to be a fiduciary, to judgment on the pleadings.

The Trustee has alleged "enough facts to state a claim to relief that is plausible on its face." *Hecker*, 556 F.3d at 580. First, the Trustee has alleged that AUL is a fiduciary of the Leimkuehler Plan, and AUL does not challenge the sufficiency of those allegations. Second, allegations that a plan fiduciary engages in undisclosed (or inadequately disclosed) revenue sharing states a claim for breach of fiduciary duty under ERISA, as well as prohibited transactions under ERISA. *See Ruppert v. Principal Life Ins. Co.*, No. 4:07-CV-00344-JAJ-TJS, (S.D. Iowa Mar. 30, 2010) (Ex. 1); *Phones Plus, Inc. v. The Hartford Fin. Servs. Group, Inc.*, 2007 WL 3124733, 4 (D. Conn. April 23, 2008); *Charters v. John Hancock Life Ins. Co.*, 534 F.Supp.2d 168 (D. Mass. 2007); *Haddock v. Nationwide Fin. Servs.*, 419 F.Supp.2d 156 (D. Conn. 2006) (cited and distinguished in *Hecker*). *See also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 600 (8th Cir. 2009) (holding that plaintiff's revenue sharing allegations stated claim for breach of fiduciary duty).[1]

AUL would have the Court believe that such holdings are impossible under existing ERISA law, because the Department of Labor and Congress have both recently considered regulatory and legislative measures that would clarify service providers disclosure obligations and explicitly mandate greater disclosure of revenue sharing fee arrangements. Doc. 48 at 6. According to AUL, "[t]he fact that laws and regulations requiring disclosure have been proposed but not yet adopted confirms that the law as it currently stands does not require disclosure." Doc. 48 at 6.

---

[1] Although the Eighth Circuit distinguished *Hecker* on its facts, the court expressed no disagreement with *Hecker*. *Braden*, 588 F.3d at 596 n.6 (citing *Hecker*). Indeed, the *Braden* court agreed with *Hecker* "that 'nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund.'" *Id.* at 596 n.7 (quoting *Hecker*, 556 F.3d at 586).

The Department of Labor's comments, accompanying its proposed regulations, does not support

such a conclusion.

> The Department weighed the option of remaining with the status quo and relying on the current regulatory framework. ***ERISA's existing fiduciary duties imposed by sections 404 and 408(b)(2) already require plan fiduciaries to ensure that fees paid to service providers are reasonable***. As part of this duty, fiduciaries must obtain information about fees and conflicts of interest. Absent a regulation, ***the status quo framework relies upon these more general fiduciary requirements*** to ensure that plans pay reasonable service fees.

Reasonable Contract or Arrangement Under Section 408(b)(2)—Fee Disclosure, 72 Fed. Reg.

70988 (Dec. 13, 2007) (emphases added).

At any rate, "[s]uch non-action by Congress affords the most dubious foundation for drawing

positive inferences." *United States v. Price*, 361 U.S. 304, 310-311 (1960). "Whether Congress

thought the proposal unwise … or unnecessary, we cannot tell; accordingly, no inference can

properly be drawn from the failure of the Congress to act." *Id*. at 312. "[S]tatutes are construed

by the courts with reference to the circumstances existing at the time of the passage. The

interpretation placed upon an existing statute by a subsequent group of Congressmen who are

promoting legislation and who are unsuccessful has no persuasive significance …." *United*

*States v. Wise*, 370 U.S. 405, 411 (1962). AUL's unsupported contentions, based on unenacted

regulatory and legislative measures, is unpersuasive and should be rejected.

### A.  The Trustee's allegations of AUL's fiduciary status

The Trustee has alleged that AUL is an ERISA fiduciary to the Leimkuehler Plan. ERISA

makes certain persons "fiduciaries" based upon their functions without regard to whether they

are formally designated as fiduciaries in plan documents.

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, [or] (ii) he renders investment advice for a fee or other compensation, direct or indirect,

with respect to any moneys or other property of such plan, or has any authority or responsibility to do so ….

29 U.S.C. § 1002(21)(A)(i) & (ii). The Trustee has alleged specific functions of AUL that render

it a fiduciary under both prongs of the definition.

First, the Trustee has alleged that "AUL exercises discretionary authority or discretionary

control respecting plan management by one or more of the following acts:

a)  selecting which non-proprietary mutual funds to offer to 401(k) plans;

b)  selecting the specific share class of non-proprietary mutual funds in which plan participants may invest;

c)  selecting which AUL proprietary funds to offer to 401(k) plans;

d)  selecting the specific share class of AUL proprietary funds in which plan participants may invest;

e)  retaining the authority to delete investment options, close them to future investments, or substitute other funds for those an employer chose to include in its 401(k) plan without that employer's consent;

f)  controlling or influencing AUL's own compensation, through "revenue sharing", without full disclosure to and knowing, voluntary, arms-length approval of an independent fiduciary of the 401(k) plans AUL serves; and/or

g)  providing complete plan management services so that "plan sponsors don't need to have all the answers, just our phone number to give to their participants."

Complaint (Doc. 1) at ¶ 35. *Cf. Charters*, 534 F.Supp.2d at 170-71; *Haddock,* 419 F.Supp.2d at

160-61.

Second, the Trustee has alleged that "AUL exercises authority or control respecting

management or disposition of assets of the 401(k) plans AUL serves by one or more of the

following acts:

a)  selecting which non-proprietary mutual funds to offer to 401(k) plans;

b)  selecting the specific share class of non-proprietary mutual funds in which plan participants may invest;

c)  selecting which AUL proprietary funds to offer to 401(k) plans;

d)  selecting the specific share class of AUL proprietary funds in which plan participants may invest;

e)  retaining the authority to delete investment options, close them to future investments, or substitute other funds for those an employer chose to include in its 401(k) plan without that employer's consent; and/or

f)  controlling or influencing AUL's own compensation, through "revenue sharing", without full disclosure to and knowing, voluntary, arms-length approval of an independent fiduciary of the 401(k) plans AUL serves.

Complaint (Doc. 1) at ¶ 36. *Cf. Charters*, 534 F.Supp.2d at 170-71; *Haddock,* 419 F.Supp.2d at 160-62.

Third, the Trustee has alleged "AUL provides investment advice to employers, participating employees, and the 401(k) plans AUL serves by one or more of the following acts:

a)  explicitly recommending particular investment options to employers and their 401(k) plans;

b)  representing (either explicitly or implicitly) that the funds AUL pre-selects and offers are appropriate, sound retirement investments for 401(k) plans and their participants;

c)  implicitly representing that the funds AUL continued to make available to 401(k) plans continued to be appropriate, sound retirement investments for 401(k) plans;

d)  selecting the specific share class of funds in which plan participants may invest;

e)  providing to employee-participants AUL's "Investor Profile Questionnaire,**"** which helps employees to determine their risk tolerance on a scale of 1 to 50; and/or

f)  through "Retirement Needs Worksheet" which it used to help employees determine their investment risk tolerance and matching specific mutual funds to the employees' tolerance.

Complaint (Doc. 1) at ¶ 41.

AUL has not challenged the sufficiency of any of these allegations regarding its fiduciary status, and as previously noted, "[e]ven after *Twombly*," the Court "must still … 'constru[e] the complaint in the light most favorable to the plaintiff, accept[] as true all well-pleaded facts alleged, and draw[] all possible inferences in her favor.'" *Hecker*, 556 F.3d at 580.

With respect to AUL's revenue sharing practices, the Trustee has alleged that:

• As a condition for a mutual fund's inclusion in AUL's pre-packaged 401(k) plans, AUL requires each mutual fund … to pay a kickback to AUL, which AUL euphemistically describes as a "revenue sharing" fee. With very few exceptions, if any, AUL selects for inclusion in its pre-packaged 401(k) plans only those mutual

14

funds whose advisors (or distributors) agree to make "revenue sharing" kickback payments to AUL. Complaint at ¶¶ 20-21.

- Due the large number of 401(k) plans AUL serves, AUL represents an extremely large sum of plan assets when it negotiates "revenue sharing" payments or fees which mutual funds and their advisors are eager to tap into. Thus, AUL's ability to extract "revenue sharing" deals with mutual funds (or their advisors) is a direct result of AUL's representation of such massive sums of employer-sponsored 401(k) plan assets. Complaint ¶ at 22.

- When the mutual fund advisors (or distributors) agree to pay "revenue sharing" kickbacks to AUL, they effectively agree to take a reduced fee for their investment management services. Nevertheless, AUL and the mutual fund nevertheless falsely represent to 401(k) plans, sponsors, trustees, and participants that the mutual fund advisor's fee for its services to AUL 401(k) plans is the full amount of the advisor's usual fee. Complaint at ¶ 23.

- The mutual fund advisor charges an amount equal to its usual fee, but the amount includes both the advisor's true fee plus the "revenue sharing" component which the advisor does not take as compensation for its services and instead takes strictly on behalf of and for the benefit of AUL. Complaint at ¶ 24.

- AUL and the mutual funds misrepresent the advisor's fee as being more than it actually is to hide the "revenue sharing" component which the advisor does not take as compensation for its services and instead takes strictly on behalf of and for the benefit of AUL. Complaint at ¶ 25.

- AUL takes and keeps "revenue sharing" payments or fees for its own benefit. Complaint at ¶ 26.

- AUL does not offset the fees 401(k) plans owe AUL for its services with the "revenue sharing" payments or fees AUL take or receives. AUL also does not credit the 401(k) plans it serves for any "revenue sharing" payments or fees AUL takes which exceed the total fee a 401(k) plan would owe to AUL for its services. Complaint at ¶ 27.

- With respect to AUL's proprietary funds (defined in Paragraph 11 above), on information and belief, AUL also takes undisclosed or inadequately disclosed "revenue sharing" payments or fees similar to those described above, although the details of how AUL negotiates, takes or receives those payments or fees are presently unknown to Plaintiff. Complaint at ¶ 29.

As discussed next, these allegations state viable claims of breach of fiduciary duty and prohibited transactions in violation of ERISA.

## B. The Trustee has stated a viable claim for breach of fiduciary duty (Counts I and III).

More than "twenty years ago, the Supreme Court observed that ERISA abounds with the language and terminology of trust law.'" *Hecker*, 556 F.3d at 579 (quoting *Firestone Tire and*

*Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989)). "ERISA's legislative history confirms that the

Act's fiduciary responsibility provisions, 'codif[y] and mak[e] applicable to [ERISA] fiduciaries

certain principles developed in the evolution of the law of trusts.'" *Id*. "[R]ather than explicitly

enumerating *all* of the powers and duties of trustees and other fiduciaries, Congress invoked the

common law of trusts to define the general scope of their authority and responsibility." *Central

States Pension Fund v. Central Transp., Inc.,* 472 U.S. 559, 570 (1985). ERISA imposes on

fiduciaries "strict standards of trustee conduct, also derived from the common law of trusts –

most prominently, a standard of loyalty and a standard of care." *Id*.

> Under the former, a plan fiduciary "shall discharge his duties with respect to a plan
> solely in the interest of the participants and beneficiaries and ... for the exclusive
> purpose of providing benefits to participants and their beneficiaries; and ... defraying
> reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Under the
> latter, a fiduciary "shall discharge his duties with respect to a plan ... with the care, skill,
> prudence, and diligence under the circumstances then prevailing that a prudent man
> acting in a like capacity and familiar with such matters would use in the conduct of an
> enterprise of a like character and with like aims." § 1104(a)(1)(B).

*Central States,* 472 U.S. at 570-571 (citation omitted).

Thus, "[t]he fiduciary obligations of the trustees to the participants and beneficiaries of [an

ERISA] plan are those of trustees of an express trust — the highest known to the law." *Id*.

(quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

> "The duty of care, diligence, and loyalty imposed by the fiduciary principle is far more
> exacting than the duty imposed by tort law not to mislead a stranger. *See*, *e.g.*, *Burdett
> v. Miller,* 957 F.2d 1375, 1381 (7th Cir. 1992) ("a fiduciary duty is the duty of an agent
> to treat his principal with the utmost candor, rectitude, care, loyalty, and good faith —
> in fact to treat the principal as well as the agent would treat himself"); *Meinhard v.
> Salmon,* 249 N.Y. 458, 164 N.E. 545, 546 (1928) (Cardozo, C.J.); *cf. Market Street
> Associates Ltd. v. Frey,* 941 F.2d 588, 594-95 (7th Cir. 1991); *Langbecker v. Electronic
> Data Systems Corp.,* 476 F.3d 299, 314 (5th Cir. 2007).

*Harzewski v. Guidant Corp.*, 489 F.3d 799, 805-806 (7th Cir. 2007).

Allegations that a fiduciary "receives payments from mutual funds in exchange for offering

the funds as an investment option to the Plans and participants" state a claim for breach of

fiduciary duty. *Haddock v. Nationwide Fin. Servs.,* 419 F.Supp.2d 156, 170 (D. Conn. 2006). Likewise, allegations that "the payments were made at the expense of the Plan participants or beneficiaries" state a claim for breach of fiduciary duty. *Id.* (where the trustees alleged "that the mutual funds set the fees they charged Plans and participants 'to cover not only the fees they would have normally charged, but also the amount of the revenue-sharing payments they had to make to Nationwide'").

Moreover, as the Seventh Circuit recognized in *Hecker*, "a violation can be found" where there is "either an intentionally misleading statement or a material omission." *Hecker*, 556 F.3d at 585 (citations omitted). "The only question is … whether the omission of information about the revenue-sharing arrangement is material." *Id.* at 586.

Under these authorities, the Trustee's allegations more than adequately state a claim for breach of fiduciary duty. First, like the trustees in *Haddock*, the Trustee has alleged that AUL received revenue sharing payments from mutual funds in exchange for offering the funds as an investment option to 401(k) plans and their participants. Complaint at ¶¶ 20-21.

Second, also as in *Haddock*, the Trustee has alleged "that the mutual funds set the fees they charged Plans and participants 'to cover not only the fees they would have normally charged, but also the amount of the revenue-sharing payments they had to make to" AUL – in other words, that the revenue sharing "payments were made at the expense of the Plan participants or beneficiaries." *Cf.* Complaint ¶ 24 ("The mutual fund advisor charges an amount equal to its usual fee, but the amount includes both the advisor's true fee plus the "revenue sharing" component which the advisor does not take as compensation for its services and instead takes strictly on behalf of and for the benefit of AUL") *and Haddock,* 419 F.Supp.2d at 170.

By contrast to the lack of any intentional misrepresentation or material omission in *Hecker*, the Trustee has alleged that "AUL and the mutual fund nevertheless falsely represent to 401(k) plans, sponsors, trustees, and participants that the mutual fund advisor's fee for its services to AUL 401(k) plans is the full amount of the advisor's usual fee." Complaint at ¶ 23.

In addition, the Trustee has alleged material omissions:  "AUL does not disclose, or does not adequately disclose, to the 401(k) plans AUL serves such as the Leimkuehler Plan, the fact that AUL negotiates and takes or accepts 'revenue sharing' payments or fees with the funds that are included in its pre-packaged 401(k) plans" or "the amount of the 'revenue sharing' payments or fees AUL negotiates with and receives from funds ...." Complaint at ¶¶ 53-54. While such information may not be material for plan participants, *see Hecker*, 556 F.3d at 586, that information is crucial to "the responsible Plan fiduciaries [who] must obtain sufficient information regarding any fees or other compensation that [the plan provider] receives with respect to the Plan's investments in each mutual fund to make an informed decision whether [the plan provider's] compensation for services is no more than reasonable." Department of Labor Opinion No. 97-15A, 1997 WL 277980 *4 (emphases added).

The Trustee's allegations thus state a claim that AUL failed to "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of providing benefits to participants and their beneficiaries; and ... defraying reasonable expenses of administering the plan," in violation of 29 U.S.C. § 1104(a)(1)(A). Similarly, the Trustee's allegations state a claim that AUL failed to "discharge [its] duties with respect to a plan ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," in violation of 29 U.S.C. § 1104(a)(1)(B).

Finally, the Trustee's allegations state a claim that AUL failed to satisfy its "duty of care, diligence, and loyalty imposed by the fiduciary principle," a duty "far more exacting than the duty imposed by tort law not to mislead a stranger," and that AUL failed to "treat [its] principal with the utmost candor, rectitude, care, loyalty, and good faith – in fact to treat the principal as well as the agent would treat himself." *Harzewski v. Guidant Corp.*, 489 F.3d 799, 805-806 (7th Cir. 2007); *Burdett v. Miller,* 957 F.2d 1375, 1381 (7th Cir. 1992).

Accordingly, AUL's motion for judgment on the pleadings with respect to the Trustee's claims of breach of fiduciary duty should be denied.

### C.  The Trustee has stated a viable claim for prohibited transactions (Counts II and III).

In addition to the rigorous fiduciary standards ERISA section 1104 imposes, "Congress enacted section 1106 'to bar categorically a transaction that [is] likely to injure the pension plan.'" *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996) (quoting *Commissioner v. Keystone Consol. Indus., Inc.,* 508 U.S. 152, 160 (1993)).

> A fiduciary with respect to a plan shall not — (1) deal with the assets of the plan in his own interest or for his own account … or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(b)(1) & (3).

AUL contends that revenue sharing payments are paid by mutual funds from the fees they take from assets in the mutual funds. AUL further contends that because the assets in a mutual fund are not "plan assets," *see* 29 U.S.C. § 1101(b)(1), revenue sharing payments are not made from plan assets and therefore do not constitute prohibited transactions. That seemingly straightforward syllogism is fatally flawed.

1. **A fiduciary's receipt of revenue sharing fees is a "prohibited transaction" under section 1106(b)(3), even if the revenue sharing fees are not paid from "plan assets."**

To begin with, AUL does not even bother to address the Trustee's alternative claim that AUL's revenue sharing constitutes a prohibited transaction under section 1106(b)(3). Thus, even if there were merit to AUL's contention that the Trustee has failed to state a claim under section 1106(b)(1), AUL would still not be entitled to judgment on the Trustee's prohibited transaction claims (Counts II and III) because the Trustee has stated a claim for prohibited transactions under section 1106(b)(3).

Section 1106(b)(3) does not require a payment to be made from plan assets in order to constitute a prohibited transaction. It is sufficient if the payment comes "from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(3). As *Haddock* recognized, "the Trustees' claims are not entirely dependent on their theory that the challenged payments are plan assets. If Nationwide is an ERISA fiduciary, it may not engage in prohibited transactions even if the payments Nationwide receives are not themselves plan assets." *Haddock,* 419 F.Supp.2d at 171.

> Violations of section 1106(b)(3) must relate to transactions involving assets of the plan, although the consideration received by the fiduciary need not itself constitute plan assets. The transactions at issue here are Nationwide's contractual arrangements with the mutual funds. Those contracts involve the plaintiffs' shares in Nationwide variable accounts — indisputably plan assets — or their proxies, the so-called accumulation units, because they are premised on the offering of the mutual funds as investment options for those plan assets.
>
> Viewing the evidence in the light most favorable to the Trustees, a reasonable fact-finder could conclude that Nationwide received consideration (*i.e.,* the revenue-sharing payments) from a party dealing with the Plans (*i.e.,* the mutual funds whose shares are available for investment by the Plans and participants) in connection with a transaction

(*i.e.,* the so-called service contracts[2]) involving assets of the plan (*i.e.,* the shares of the variable accounts, represented by the accumulation units).

419 F.Supp.2d at 171.

In the present case, the Trustee has similarly alleged that:

- AUL received consideration (*i.e.*, the revenue sharing payments) (Complaint ¶¶ 26, 29-28, 64(b));

- from a party dealing with the plans (*i.e.*, the mutual funds whose shares are available for investment by plans and their participants) (Complaint ¶¶ 20-22, 24, 26);

- in connection with a transaction (*i.e.,* the revenue sharing transactions) (Complaint ¶¶ 20-22, 24, 26);

- involving assets of the plan (*i.e.*, the shares of the separate accounts, represented by the "accumulation units" in the separate accounts). *See* AUL's Memorandum (Doc. 48) at 8 (plan participants "purchase 'accumulation units' in the separate accounts, and the separate accounts then invest in the mutual funds").

Although AUL disputes that the revenue sharing fees are taken from plan assets, AUL cannot seriously dispute that revenue sharing fees are directly tied to the interests represented by the accumulation units in the separate accounts. As *Haddock* recognized and AUL admits, those accumulation units are "indisputably plan assets." AUL Memorandum (Doc. 48) at 8 ("Assets held in a separate account are considered plan assets under ERISA. *See* 29 C.F.R. §2510.3-101(h)(1).").

According to the Department of Labor, when a plan provider applies revenue sharing payments toward the amount a plan owes to the provider for services, *then* the revenue sharing arrangement is not a prohibited transaction.

[B]ecause Frost's trustee agreements with the Plans are structured so that any 12b-1 or subtransfer agent fees attributable to the Plans' investments in mutual funds ***are used to benefit the Plans***, ***either as a dollar-for-dollar offset against the fees the Plans would***

---

[2] "Service contracts" is the term Nationwide used for its revenue sharing agreements. *Haddock,* 419 F.Supp.2d at 162 ("Nationwide investigated and ultimately implemented a system under which mutual funds make payments to it based on a percentage of the assets that Plans and participants invested in the mutual funds through Nationwide. Nationwide now refers to that source of income as 'service contract payments'").

> ***be obligated to pay to Frost for its services or as amounts credited directly to the Plans***, it is the view of the Department that Frost would not be dealing with the assets of the Plans in its own interest or for its own account, or receiving payments for its own personal account in violation of section 406(b)(1) or (b)(3).

Department of Labor Opinion No. 97-15A, 1997 WL 277980 *4 (emphases added). The agreements there, however, "expressly provide[d] that any fees received by Frost as a result of the Plan's investment in such a mutual fund [would] be used to pay all or a portion of the compensation that the Plan [was] obligated to pay to Frost, and that ***the Plan [would] be entitled to any such fees that exceed the Plan's liability to Frost***." *Id.* at *3 (emphasis added). In the Department's view, the responsible fiduciaries not only need to know the amount of Frost's revenue sharing receipts in order to make an informed decision whether Frost's fees were reasonable, but the plan fiduciary also needed that information "to assure, among other things, that any fee offsets to which the Plan is entitled are correctly calculated and applied." *Id.* at *4.

AUL's revenue sharing arrangements, however, are not structured like Frost's. AUL's revenue sharing receipts are either not disclosed or inadequately disclosed, and instead of being credited dollar-for-dollar to the plans, they are an open-ended windfall to AUL. AUL never credits a dime of revenue sharing receipts to a plan.

The Trustee has stated a claim for prohibited transaction under section 1106(b)(3). AUL is thus not entitled to judgment on those claims (Counts II and III).

### 2. Revenue sharing fees constitute "plan assets" within the meaning of ERISA when they are received by a plan fiduciary like AUL.

*Hecker* held that "[o]nce the fees are collected from the mutual fund's assets and transferred to one of the Fidelity entities, they become Fidelity's assets … [and] not assets of the Plans." 556 F.3d at 584. That reasoning makes sense in the context of determining fiduciary status. It is a straightforward application of 29 U.S.C. § 1101(b)(1) for determining whether assets are "plan

assets" for purposes of making the person who controls them a fiduciary. Section 1101(b)(1)

provides:

> In the case of a plan which invests in any security issued by a [mutual fund], the assets
> of such plan shall be deemed to include such security but shall not, solely by reason of
> such investment, be deemed to include any assets of such [mutual fund].

*Hecker*, 556 F.3d at 584 (quoting 29 U.S.C. § 1101(b)(1) for purposes of analyzing the Fidelity

defendants' fiduciary status). It makes perfect sense that the mere investment of plan assets in a

mutual fund should not "solely by reason of such investment" render the manager of a mutual

fund a fiduciary of every plan invested in the fund. Thus, just because revenue sharing payments

do not constitute "plan assets" for purposes of rendering someone a fiduciary, does not mean that

such payments are not "plan assets" when they are received by someone who is already a

fiduciary for other reasons.

Sums that may not constitute "plan assets" when a non-fiduciary receives them are

nevertheless "plan assets" when a fiduciary like AUL receives them. *Haddock v. Nationwide Fin.*

*Servs.,* 419 F.Supp.2d 156, 170 (D. Conn. 2006). "[C]ourts that have referred to or applied a

functional approach have considered whether the items in question could be used to benefit the

fiduciary *at the expense of* plan participants or beneficiaries." *Id*. (emphasis in original) (citing

*Acosta v. Pacific Enterprises,* 950 F.2d 611, 620 (9th Cir.1991) and *Metzler v. Solidarity of*

*Labor Orgs. Health & Welfare Fund,* 1998 WL 477964, *7 (S.D.N.Y. Aug.14, 1998), *aff'd sub*

*nom. Herman v. Goldstein,* 224 F.3d 128 (2d Cir. 2000)).

A "functional approach appears consistent with both the reasoning of decisions that embrace

a broad interpretation of 'plan assets,' and Congress' remedial purposes in adopting ERISA."

*Haddock,* 419 F.Supp.2d at 170. The *Haddock* court held that "'plan assets' include items a

defendant holds or receives:  (1) as a result of its status as a fiduciary or its exercise of fiduciary

discretion or authority, and (2) at the expense of plan participants or beneficiaries." *Id*. at 170.

Tested against this functional approach, the Trustees' claims survive Nationwide's motion for summary judgment. The plaintiffs have alleged that Nationwide receives payments from mutual funds in exchange for offering the funds as an investment option to the Plans and participants, *i.e.,* as a result of its fiduciary status or function. As discussed above, there is evidence in the record in support of that allegation.

In addition, the Trustees have alleged that the payments were made at the expense of the Plan participants or beneficiaries. Specifically, the fourth amended complaint alleges that the mutual funds set the fees they charged Plans and participants "to cover not only the fees they would have normally charged, but also the amount of the revenue-sharing payments they had to make to Nationwide."

*Id*.

There is nothing inconsistent between *Hecker*'s holding that payments made from mutual fund assets do not make the recipient a fiduciary, and *Haddock*'s holding that payments made from mutual fund assets regain their "plan asset" status when those payments are made to someone who is *already* a fiduciary. *Haddock*'s holding is well reasoned, firmly grounded in authority, and persuasive. The Court should therefore follow *Haddock* on this issue, as well.

> **3. Whether AUL received revenue sharing from plan assets is in part a factual question which cannot be appropriately resolved on a motion for judgment on the pleadings.**

As AUL acknowledges, "[w]hen participants in 401(k) plans served by AUL make an investment, they do not purchase shares of mutual funds; instead, they purchase 'accumulation units' in … separate accounts, and the separate accounts then invest in mutual funds." Doc. 48 at 8. Unlike the assets held in mutual funds, however, and as AUL further concedes, "[a]ssets held in a separate account are considered plan assets under ERISA. *See* 29 C.F.R. § 2510.3-101(h)(1)." Doc. 48 at 8. Any revenue sharing payments made from a separate account would thus constitute self-dealing in plan assets, a prohibited transaction under section 1106(b)(1).

AUL contends that "critically, plaintiff does *not* allege that any revenue sharing flows through separate accounts, … and he cannot make such an allegation consistent with his duties under Fed. R. Civ. P. 11." Doc. 48 at 8 (citing Complaint ¶ 29) (where the Trustee alleges that

with respect to AUL's "proprietary funds," AUL takes revenue sharing payments or fees

"although the details of how AUL negotiates, takes and/or receives those payments or fees are

presently unknown to Plaintiff").

In point of fact, the Trustee **has** alleged that "AUL violated ERISA §§ 406(b)(1) and/or

(b)(3) in one or more of the following ways:

> *taking "revenue sharing" payments or fees from plan assets held in AUL's*
> *proprietary, unregistered "separate accounts"* for AUL's own interest and for its own
> account ….

Complaint ¶ 64(a) (emphasis added). Moreover, AUL's own exhibits confirm the good faith

basis of that allegation. Throughout the AUL/OneAmerica prospectus, there are 20 separate

references to separate account fees or charges. AUL Ex. A (Doc. 48-1) at 3, 5, 7, 9, 11 (original

pagination) ("information does not reflect charges and fees associated with a separate account

that invests in the Portfolio"); at 4, 6, 8, 10, 12 ("If separate account and/or insurance contract

fees and charges were reflected, expenses would be higher."); at 13, 14, 15, 16, 17, 18, 19, 20,

21, 22 ("Total return does not include separate account or contract charges.").

AUL nevertheless insists that "not a single penny of revenue sharing AUL receives is paid

out of any separate account. Instead, the revenue sharing is paid by the mutual fund companies –

some AUL affiliates, some not – in which the separate accounts are invested." Doc. 48 at 8

(citing AUL's Exhibits A and C (Docs. 48-1 and 48-3)). Those are factual assertions which

cannot be resolved on a motion for judgment on the pleadings and are premature. *Wilson v.*

*AT&T Inc.*, 2010 WL 987737 at *5, 6 (S.D. Ind. Mar. 12, 2010) (Barker, J.) (motion for

judgment on the pleadings prior to discovery denied as premature).

The basis for AUL's factual assertions – two prospectuses – only establish that with respect

to those funds, some sorts of payments are made by funds to AUL. AUL's exhibits do not

establish that no payments are made from plan assets in the separate accounts, but *that* is exactly

what AUL would have to establish in order to establish it has not engaged in self-dealing in plan assets. Indeed, as demonstrated, Exhibit A actually makes fairly clear that *some kind* of fees and charges are, contrary to AUL's factual claims, paid from separate accounts – which is to say, from plan assets.

This factual dispute, however, cannot be resolved at the pleading stage. AUL's motion for judgment on the pleadings is, in this regard, premature and should accordingly be denied.

### III. The Trustee has stated a viable claim in the alternative against AUL as a non-fiduciary (Count IV).

Ten years ago, the Supreme Court held that ERISA authorizes a "participant, beneficiary, or fiduciary" of a plan to bring a civil action to obtain "appropriate equitable relief" to redress violations of ERISA against a non-fiduciary "party in interest" to a transaction barred by § 1106(a). 29 U.S.C. § 1132(a)(3). *Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241 (U.S. 2000). Section 1106(a)(D) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct *or indirect* … transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." AUL is a "party in interest" because it is "a person providing services to such plan." 29 U.S.C. § 1002(14)(B).

The Trustee has alleged that "[a]s a direct or indirect result of the contracts which AUL enters into with the Plan and the Class members' plans, AUL receives 'revenue sharing' payments or fees," and those payments or fees come directly *or indirectly* from plan assets. Complaint ¶¶ 74-76. To the extent any such payments or fees come from separate accounts, they come directly from plan assets. To the extent any such payments or fees come from mutual funds, they come from mutual fund assets, and the mutual fund assets came from plan assets in

26

the separate accounts when AUL invested those separate account assets in the mutual funds; thus, any such payments or fees come indirectly from plan assets.

As a result, 401(k) plans that enter into contracts for 401(k) services from AUL unwittingly cause their plans to enter into a section 1106(a) prohibited transaction, to which AUL is a party. Complaint ¶¶ 76-77. Under *Harris Trust*, AUL may be sued pursuant to 29 U.S.C. § 1132(a)(3) for its participation in such a section 1106(a) prohibited transaction. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601 (8th Cir. 2009) (holding that revenue sharing allegations stated a prohibited transaction claim under section 1106(a)(1)(C)).

In its memorandum in support of its motion for judgment on the pleadings, AUL does not take issue with any of the sufficiency of the Trustee's allegations. Rather, it contends that "*Hecker* once again forecloses this theory." Doc. 48 at 9.

First, AUL contends, its revenue sharing practices do not prevent the Trustee from fulfilling his duty as an ERISA fiduciary because "the Trustee has no duty to find the lowest possible fees for the plan." Doc. 48 at 9. While it is true the Trustee has no duty "to scour the market to find the cheapest possible fund," the Trustee's claim against AUL does not have anything to do with finding "the lowest possible fees for the plan." The Trustee has made no such allegations nor is this even a rational inference (much less a *favorable* inference) to be drawn from the allegations the Trustee *has* made.

Next, AUL contends that "*Hecker* held that a fiduciary has no obligation to disclose revenue sharing ***to participants***." Doc. 48 at 9 (emphasis added). Then AUL asserts that "[a]s a plan fiduciary, plaintiff has no greater rights to information about revenue sharing than plan participants," citing *Ruppert v. Principal Life Ins. Co.*, No. 4:07-CV-00344-JAJ-TJS, 2009 WL 5667708, at *13-14 (S.D. Iowa Nov. 5, 2009), *reconsideration granted in part*, slip op. (S.D.

Iowa Mar. 30, 2010). The *Ruppert* court cited no authority for that proposition, however, and whether the court's unsupported statement even survives that court's later decision on reconsideration is doubtful. *See* Ex. 1 (slip copy of *Ruppert v. Principal Life Ins. Co.*, No. 4:07-CV-00344-JAJ-TJS (S.D. Iowa Mar. 30, 2010) (reinstating in part ERISA revenue sharing claims on which judgment on the pleadings had been granted)).

Not only do AUL and *Ruppert* fail to cite authority for the proposition that a plan fiduciary has "no greater rights to information about revenue sharing than plan participants," both ignore the contrary statutory and Department of Labor authority that plan fiduciaries have a need for revenue sharing information in order to discharge their fiduciary obligation of ensuring that fees charged to the plans are reasonable and correctly calculated and applied. Department of Labor Opinion No. 97-15A, 1997 WL 277980 *4 (emphases added). *See infra* at 9-10 (quoting and discussing ERISA).

Instead, AUL and *Ruppert* rationalize that requiring service providers to disclose their revenue sharing to plan fiduciaries "would undermine the rationale behind *Hecker*." Doc. 48 at 9. According to *Ruppert*, "if revenue sharing disclosure to fiduciaries was deemed to be material, then the fiduciaries would have a fiduciary duty to inform the plan participants and beneficiaries of the revenue sharing; precisely the outcome that *Hecker* held against." AUL and *Ruppert* are wrong. Just because revenue sharing information is material to a fiduciary (who needs that information to carry out her fiduciary duty to ensure the reasonableness of service provider fees) does not mean that same information is necessarily material "for someone interested in the cost of including a certain investment in her portfolio and the net value of that investment. … The later distribution of the fees … is not information the participants needed to know to keep from acting to their detriment." *Hecker*, 556 F.3d at 586. The DOL's position regarding the materiality

28

of and necessity for disclosure of revenue sharing information to plan fiduciaries is thus fully consistent and compatible with *Hecker*'s holding that a plan sponsor need not disclose revenue sharing information to plan participants.

Finally, AUL asserts that the Trustee's claim against AUL as a party in interest fails, given *Hecker*'s holding "that payments from mutual funds to service providers are not made from plan assets, [and thus] these payments cannot form the basis for a prohibited transaction claim." Doc. 48 at 9. This argument suffers from the same fatal flaw as AUL's earlier arguments against the Trustee's prohibited transaction claims:  only section 1106(b)(1) could require the revenue sharing payments to come from "plan assets."[3]

Under section 1106(a)(D), by contrast, all that is required is "a transaction" that "constitutes a direct *or indirect* … transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." If any of the payments come from the separate accounts, then they come from plan assets, contrary to AUL's assertions. Furthermore, as discussed above, under the AUL scheme, participants' 401(k) contributions – quintessential "plan assets" – end up in separate accounts, from there they are invested in mutual funds, and from there some of those contributions wind up in AUL's coffers in the form of revenue sharing payments. That describes an "indirect … transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." AUL's motion for judgment on the pleadings on Count IV should be denied.

---

[3] As discussed above, even section 1106(b)(1) does not require the payments to come from plan assets when the payments are made to a fiduciary. *See infra* at 22-24.

## CONCLUSION

The Trustee does not contend that AUL should not be able to earn fees through revenue sharing. All the Trustee is really asking for is that AUL completely and accurately disclose its fees, and that it credit to the Plan any amounts AUL receives in excess of its fully disclosed fee. It is difficult to imagine any legitimate objection to that request, unless AUL is earning extravagant, undisclosed revenue sharing fees. In any case, ERISA's fiduciary standards require such disclosures and basic fair play. AUL is not entitled to judgment on the pleadings, and the Court should deny AUL's motion in its entirety.

Respectfully submitted,

_/s/ Robert L King_
Robert L. King
KOREIN TILLERY LLC
505 N. 7th Street, Suite 3600
St. Louis, Missouri 63101
Phone:  (314) 241-4844
Fax:  (314) 241-3525

Klint L. Bruno
KOREIN TILLERY LLC
205 N. Michigan Avenue, Suite 1940
Chicago, Illinois 60601
Direct: (312) 899-5065
Fax: (312) 641-9555

Kathleen Delaney
Edward Delaney
Amanda Couture
DELANEY & DELANEY LLC
3646 N. Washington Blvd.
Indianapolis, IN  46205
Phone: (317) 920-0400
Fax: (317) 920-0404

Eric H. Zagrans  (0013108)
ZAGRANS LAW FIRM LLC
474 Overbrook Road
Elyria, Ohio 44035
Phone: (440) 452-7100

*Attorneys for the Trustee of Leimkuehler,*
*Inc. Profit Sharing Plan*

Dated: June 28, 2010

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 28, 2010, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will automatically send a notice of electronic filing to all

persons registered with Court's electronic filing system as of that date.

         _/s/ Robert L King_____
         Robert L. King