UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT V. LEIMKUEHLER, as trustee of and on behalf of LEIMKUEHLER, INC. PROFIT SHARING PLAN, and on behalf of all others similarly situated, ) ) ) ) ) | |
| Plaintiff, ) ) | CAUSE NO.:  1:10-CV-333- JMS-TAB |
| v. ) ) | Hon. Jane Magnus-Stinson |
| AMERICAN UNITED LIFE INSURANCE COMPANY, ) ) ) | |
| Defendant. ) | |

### DEFENDANT AMERICAN UNITED LIFE INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS <u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>

Defendant American United Life Insurance Company ("AUL") respectfully submits this reply in support of its motion for judgment on the pleadings.

### Introduction

In response to AUL's straightforward, nine-page motion, plaintiff spends 30 pages trying to explain why the Seventh Circuit's decision in *Hecker v. Deere & Co*., 556 F.3d 575 (7th Cir. 2009), does not foreclose the claims asserted in his complaint.  As explained below, his explanations are meritless.

In an effort to save his claims, plaintiff relies extensively on *Haddock v. Nationwide Financial Services, Inc.*, 419 F. Supp. 2d 156 (D. Conn. 2006), a district court opinion that pre-dates *Hecker* and is obviously not controlling authority.  Moreover, on the points that are relevant to this motion, *Haddock* is in conflict with the Seventh Circuit's binding authority in

*Hecker*. More persuasive guidance (albeit not controlling guidance) can be found in *Ruppert v. Principal Life Insurance Co.* ("*Ruppert 1*"), No. 4:07-CV-00344-JA-TJS, 2009 WL 5667708, at *14 (S.D. Iowa Nov. 5, 2009), *reconsideration granted in part*, slip op. ("*Ruppert II*") (S.D. Iowa Mar. 31, 2010) (Dkt. 52-1), which applied *Hecker* to the same sorts of claims at issue here and found them wanting. AUL's motion for judgment on the pleadings should be granted.

## Argument

I.     **Plaintiff's Suggestion That *Hecker* Applies Only to Plan Participants Is Unsupportable.**

Plaintiff first attempts to distinguish *Hecker* by claiming that the Seventh Circuit only addressed the obligation to disclose revenue sharing arrangements to plan participants, not to plan sponsors. Opp. at 6-10. In other words, plaintiff makes the curious claim that the plan sponsor has greater rights to information about revenue sharing than the plan participants. This argument makes little sense, especially given plaintiff's contention later in his brief that revenue sharing payments reduce the returns of plan participants. Opp. at 17 (characterizing complaint as alleging that "the [revenue sharing] payments were made at the expense of the Plan participants or beneficiaries").

The argument also finds no support in *Hecker*. The Seventh Circuit held that the service provider and mutual fund provider in that case, Fidelity, could allocate the money it received from the operation of its mutual funds as it saw fit; that distribution "was not, at the time of the events here, something that had to be disclosed." 556 F.3d at 585. Nothing in *Hecker* suggests that this same principle would not apply to a demand for disclosure to the plan sponsor. In fact, the court noted that the entire thrust of the lawsuit was that "Deere *and Fidelity* had a duty to disclose the revenue-sharing arrangements." *Id.* (emphasis added).

2

Plaintiff argues that AUL should have disclosed revenue sharing to him as a plan fiduciary because he has "an ERISA-imposed fiduciary duty to ensure that fees charged to the Plan are reasonable, a duty he obviously cannot carry out without knowing who is charging fees and how much is being charged to the Plan." Opp. at 9. But plaintiff already knows exactly who is charging fees and how much is being charged to the Plan. Plaintiff's contracts with AUL disclose the fees AUL charges the Plan for its services. *See* Exhibits A and B hereto. Similarly, the prospectuses of the mutual funds disclose the expense ratios of the various investment options available to plan participants. *See, e.g.*, Exhibits A-C to AUL Mem. As a result, plaintiff is not seeking information about the fees charged to the Plan; rather, he is seeking information about the "internal, post-collection distribution" of the fee collected by mutual funds. *Hecker*, 556 F.3d at 586. As the Seventh Circuit concluded, however, the "critical figure" is the total fee charged by each entity, not the "internal, post-collection distribution" of those fees. *Id*. Plaintiff was told the total fees charged by each entity, and he does not allege or argue otherwise.[1]

The only court to consider this precise issue post-*Hecker* correctly held that a plan fiduciary has no greater rights to information concerning revenue sharing than plan participants. In *Ruppert*, the court observed that any such finding would undermine the rationale behind

---

[1] Plaintiff does note that he has alleged that "'AUL and the mutual fund nevertheless falsely represent to 401(k) plans . . . that the mutual fund advisor's fee for its services to AUL 401(k) plans is the full amount of the advisor's usual fee.'" Opp. at 18 (quoting Compl. ¶ 23). But this is semantic gamesmanship. The mutual fund advisor's expense ratio must, by law, be the same for everyone who buys the same share class. *See* 17 C.F.R. § 270.18f-3 (allowing multiple share classes and providing that the expense allocation method "shall be applied on a consistent basis"); 26 C.F.R. § 1.562-2 (providing that for a dividend to qualify for a deduction, "every shareholder of the class of stock with respect to which the distribution is made must be treated the same as every other shareholder of that class"). What plaintiff is really complaining about is that the mutual fund company pays revenue sharing using money that indisputably belongs to the mutual fund company.

*Hecker*: "[I]f revenue sharing disclosure to fiduciaries was deemed to be material, then the fiduciaries would have a fiduciary duty to inform the plan participants and beneficiaries of the revenue sharing; precisely the outcome that *Hecker* held against." Opp. at 28.[2] AUL cannot be liable for failing to disclose immaterial information.

II.     **Plaintiff's Arguments Regarding "Plan Assets" Do Not Salvage His Claims.**

The Seventh Circuit held in *Hecker* held that revenue sharing payments from mutual fund companies are not made with "plan assets." That holding defeats plaintiff's prohibited transaction claims. Plaintiff's responses to this point are meritless.

First, plaintiff contends that even if the revenue sharing payments are not made with plan assets, AUL can still be held liable because the mutual fund shares are plan assets, and the revenue sharing payments were made in connection with the purchase of these mutual fund shares. Opp. at 20-22. The sole support for this claim is the district court opinion in *Haddock*. But *Haddock* is inconsistent with fundamental principles of ERISA; if accepted, it would eviscerate *Hecker's* holding that mutual fund assets are not plan assets. The argument plaintiff advances amounts to a contention that, because the mutual fund assets can in a sense be traced back to plan participants – in other words, because the money was invested by participants in a separate account, and the separate account in turn purchased shares in mutual funds – the payment of mutual fund assets can be a prohibited transaction. This would render 29 U.S.C. § 1101(b)(1) – which provides that mutual fund monies are *not* plan assets – meaningless, because

---

[2] Plaintiff asserts that AUL "fail[ed] to tell the Court" that the *Ruppert* court granted partial reconsideration with respect to claims regarding unregistered separate accounts. Opp. at 8. In fact, AUL quite clearly advised the Court that reconsideration had been granted in part. *See* Doc. 48 at 6. That reconsideration ruling, moreover, was explicitly based on subsequent *Eighth Circuit* authority, which is not controlling here. *Ruppert II*, slip op. at 1, 19-24 (Dkt. 52-1). It was also based on the claim that revenue sharing payments were taken directly from separate accounts. *Ruppert I*, 2009 WL 5667708, at *20-21; *Ruppert II*, slip op. at 20-23. As explained below (*infra* at 5-6), that is not the case here.

4

money invested in a mutual fund can always be traced back to participants or connected with plan assets in some tangential way. Plaintiff's argument is thus tantamount to claiming that money in the mutual funds are always plan assets, which is, again, inconsistent with 29 U.S.C. § 1101(b)(1). It is also inconsistent with *Hecker*, which addressed an analogous business model and rejected the theory that "there is something wrong, for ERISA purposes, in that arrangement." 556 F.3d at 585.

Second, plaintiff contends that, even though *Hecker* held that the money used to make revenue sharing payments are not plan assets, the same money can somehow qualify as a plan asset if it is paid to an alleged fiduciary. Opp. at 22-24. Again, the sole support for this contention is the circular reasoning of *Haddock*, which mixes the distinct concepts of fiduciary status, on the one hand, and plan assets, on the other. 419 F. Supp. 2d at 170. And plaintiff takes *Haddock* a giant step further, so that, under his view, the same dollar can simultaneously be (a) a plan asset and (b) not a plan asset. Opp. at 23 ("just because revenue sharing payments do not constitute 'plan assets' for purposes of rendering someone a fiduciary, does not mean that such payments are not 'plan assets' when they are received by someone who is already a fiduciary for other reasons"). No court, including *Haddock*, has gone this far.

The fundamental problem with plaintiff's reliance on *Haddock*, however, is that *Haddock* is at odds with *Hecker*, which unequivocally holds that assets of mutual funds are not plan assets – without regard to the distinct question of whether the recipient of the payment is a fiduciary. Plaintiff may prefer the outcome in *Haddock*, but when there is a conflict, this Court must apply controlling authority. Here, that is *Hecker*.

Finally, plaintiff argues that whether AUL received revenue sharing from plan assets in separate accounts is a factual question for which discovery is required. Opp. at 24-26. This is

not a topic for discovery because plaintiff has *not* alleged that revenue sharing is taken from separate accounts. *See* Compl. ¶ 29 (acknowledging that plaintiff does not know how AUL receives revenue sharing with respect to its proprietary funds). It is plaintiff's burden to plead "a fuller set of factual allegations," and discovery is not warranted unless he can plead such facts. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). Plaintiff's vague allegation that AUL has violated ERISA by "taking 'revenue sharing' payments or fees from plan assets held in AUL's proprietary, unregistered 'separate accounts'" (Opp. at 25, quoting Compl. ¶ 64(a) (emphasis omitted)), does not meet plaintiff's burden under *Twombly* and *Iqbal*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### III.   Plaintiff's Alternative Claim Against AUL as a Non-Fiduciary Also Fails

Plaintiff argues that he can maintain a prohibited transaction claim against AUL as a non-fiduciary because 29 U.S.C. § 1106(a)(1)(D) prohibits fiduciaries (i.e., himself) from engaging in transactions if "he knows or should know that such transaction constitutes a direct or indirect . . . transfer" of plan assets to "a party in interest." Opp. at 26 (citation and emphasis omitted). This theory, aside from exposing plaintiff himself to potential liability (since it depends on a showing that he knew or should have known that the transaction was prohibited), is once again foreclosed by *Hecker*.

As plaintiff points out, the court in *Hecker* held that the service provider, Fidelity, was not a "fiduciary" as that term is used in ERISA. Opp. at 7. Yet even though Fidelity was found to be a non-fiduciary, the Seventh Circuit found that there was nothing wrong, "for ERISA purposes," with the revenue sharing arrangement between two Fidelity affiliates. 556 F.3d at 585. And this result makes perfect sense in light of the Seventh Circuit's holding that mutual

fund assets are not plan assets. Once a mutual fund company receives its fees, those fees belong to that company, which is free to disburse them as it chooses. *Id.* at 585-86. They are not "assets of the plan." *Id.* at 584-85.

Plaintiff's argument also fails as a matter of statutory construction. Plaintiff places heavy emphasis on the word "indirect," and argues that revenue sharing qualifies as an "indirect transfer" of plan assets. Opp. at 29. But the transfer, whether direct or indirect, must still be a transfer of "plan assets," and as explained above, revenue sharing is indisputably not paid from plan assets. For this reason as well, plaintiff's argument should be rejected.

## Conclusion

For the reasons stated above and in its opening brief, AUL respectfully requests that the Court enter an order granting judgment on the pleadings in favor of AUL on all counts of the complaint.

Dated:  July 14, 2010	Respectfully submitted,

                AMERICAN UNITED LIFE INSURANCE
                COMPANY


       By:  /s/ Eric S. Mattson
             One of its attorneys

            Robert D. MacGill
            Bart A. Karwath
            Dennis P. Stolle
            Barnes & Thornburg LLP
            11 South Meridian Street
            Indianapolis, IN 46204
            (317) 231-1313
            (317) 231-7433 (fax)

            Joel S. Feldman
            Eric S. Mattson
            Sarah H. Newman
            Sidley Austin LLP
            One South Dearborn Street
            Chicago, IL  60603
            (312) 853-7000
            (312) 853-7036 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2010, a copy of Defendant American United Life Insurance Company's Reply in Support of Its Motion for Judgment on the Pleadings was filed electronically. Notice of the filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Undersigned counsel further certifies that, on this date, the above filing was sent by regular U.S. Mail, postage prepaid, to all counsel not registered with the Court to receive electronic filings.

/s/ Eric S. Mattson
*One of the Attorneys for Defendant*
*American United Life Insurance Company*