# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **ROBERT V. LEIMKUEHLER**, as trustee of and on behalf of Leimkuehler, Inc. Profit Sharing Plan, and on behalf of all others similarly situated,<br><br>          *Plaintiff*,<br>     *vs*.<br><br>**AMERICAN UNITED LIFE INSURANCE COMPANY**,<br>          *Defendant*. | ) ) ) ) ) ) ) ) ) ) ) | No. 1:10-cv-333-JMS-TAB |

## <u>ENTRY</u>

This Cause is before the Court on the motion of Defendant American United Life Insurance Company ("AUL") for judgment on the pleadings against all of the claims of Plaintiff Trustee Robert V. Leimkuehler (the "<u>Trustee</u>") under Fed. R. Civ. P. 12(c).  [Dkt. 47.]  For the reasons set forth herein, the motion is granted in part and denied in part.

A motion for judgment on the pleadings under Rule 12(c) is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).   Judgment on the pleadings is warranted when the well-pled facts of a complaint fail to show that the plaintiff is entitled to relief:

> As the Court held in *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  *Id*., at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).   A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  550 U.S., at 555, 127 S.Ct. 1955.   Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id*., at 557, 127 S.Ct. 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual

1

matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S.Ct. 1955.   A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955.   The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*.   Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).   Thus, in ruling on the present motion, the Court accepts all the well-pled facts in the Complaint as true, construes them in the light most favorable to the Trustee, and draws all possible reasonable inferences from them in the Trustee's favor.   *Golden v. Helen Sigman & Assoc., Ltd.*, 611 F.3d 356, 360 (7th Cir. 2010).

# I.
## BACKGROUND

Mr. Leimkuehler brought this suit in his capacity as the Trustee of the Leimkuehler, Inc. Profit Sharing Plan (the "Plan"), against AUL, which is a service provider to the Plan.   The Trustee also seeks to bring this suit on behalf of a class of similarly situated plans serviced by AUL.   The Complaint contains certain allegations that the Court must accept as true for purposes of this motion.   The Court notes the Complaint is replete with "labels and conclusions" that are not entitled to credit under *Iqbal*, 129 S.Ct. at 1949.

### A.  The Trustee's Allegations[1]

The following well-pled allegations are accepted as true:

---

[1] The Complaint tends to allege how AUL acts with respect to "employers" in general, rather than how AUL specifically acted with respect to Leimkuehler, Inc., the Plan sponsor here.   Because AUL has not argued that it treated Leimkuehler, Inc., differently than any other employer, the Court will assume that AUL treated it the same, given that the Plan documents AUL submitted, [dkt. 56-2], appear to comport with the allegations in the Complaint.   But nothing in this Entry should be read to suggest that class-action status is, or is not, appropriate; no motion for class certification has been filed yet.

2

AUL provides retirement plan packages and services to employers, including plan-administration services, daily updates of Plan records, a program for distribution of benefits to participants and beneficiaries, investment reports to participants, newsletters, and signature-ready government forms.   From the total number of mutual funds generally available in the United States, AUL negotiates agreements with a lesser number of mutual funds that it offers as investment options in its pre-packaged 401(k) retirement plans to employers.   AUL also has its own proprietary mutual funds that it includes as investment options.   These proprietary funds are created, owned, and managed by AUL.   Some of the proprietary funds are qualified Ainvestment companies@under the Investment Company Act of 1940 and are registered with the Securities and Exchange Commission.   Other AUL proprietary funds are not investment companies and are not registered with the SEC; these funds are referred to as Aseparate accounts@rather than mutual funds.

After being chosen as an employer=s 401(k)-plan service provider, AUL presents to the employer a menu of selected investment options which may include non-proprietary mutual funds and/or AUL=s own proprietary funds.   The employer must select from this menu which investment options to include in its plan for its employee-participants to choose as investments for their individual accounts.   AUL does not disclose to the employer the available share classes of each investment option because AUL retains the option of selecting the particular share classes that will be included in a plan.   In addition, after an employer has made the initial selection of investment options to include in its plan, AUL retains the authority and discretion, without further consent from the employer, to delete options from the plan, close options to future investments, and substitute other investment options for those initially selected.

As compensation, investment advisors to mutual funds charge fees to the funds that they advise and/or manage.   These fees are calculated as a percentage of the value of the assets (or growth)[2] in the mutual funds (the Aexpense ratio@ and are collected from the assets that otherwise would be returned to the investors.   Some or all of the investment advisors/managers of the funds that AUL selects for its 401(k) plan packages (and into which participants invest their 401(k) monies) in turn pay a portion of these collected expense-ratio fees to AUL.   This practice is denoted by various names; this Entry will refer to it as Arevenue sharing,@ and the payments will be referred to as Ashared revenue.@ AUL takes and keeps this shared revenue; it neither uses the revenue to offset or reduce the compensatory fees that it charges the plans that it services, nor does it credit plans for the amounts that its shared revenues exceed what the plans would owe AUL for its services.   AUL did not disclose to its plans the fact that it negotiates and takes shared revenue or the amount of that revenue.   The plans that AUL services receive no additional services from AUL in return for its receipt of shared revenue.

Other contentions are contained in the complaint.   The Trustee contends that AUL uses its bargaining power as the service provider to a large number of plans to Aexact@ revenue-sharing deals from mutual funds and that it selects only those mutual funds who agree to pay shared revenue, or Akickbacks,@ as the Trustee labels them.[3]   Because the plans that AUL administers allegedly receive no extra services in return for AUL=s receipt of shared revenues and AUL does not credit the plans with its shared revenue, the Trustee contends that shared revenue is a windfall to AUL that comes at the expense of the plans and their participants.

---

[2] The calculation was described both ways in the pleadings and the briefs.

[3] The Court observes that such language is precisely the kind of "labels and conclusions" *Iqbal* deemed insufficient.   They are thus unhelpful to the Court's review of the Complaint.

**B.  The Trustee's Claims**

The Trustee=s claims are in four counts, all arising under the Employee Retirement Income Security Act of 1974 (AERISA@), 29 U.S.C. ' 1101, *et seq.*   Counts I and II allege that AUL is liable as an ERISA fiduciary, while Count IV alleges liability regardless of AUL's fiduciary status. Count I claims that AUL breached its fiduciary duties of loyalty and prudence to the plans under 29 U.S.C. ' 1104(a)(1) in two ways:   first, by failing to disclose, or failing to disclose adequately, to the plans, their employer-sponsors, and their employee-participants, AUL=s revenue-sharing arrangements with the mutual funds; and, second, by receiving and keeping shared revenue without crediting it to the plans= accounts.   This Count claims that the plans have suffered and continue to suffer losses as a result of AUL=s breaches and prays for a declaratory judgment that AUL=s revenue-sharing practices violate ERISA; monetary damages for the plans= losses; disgorgement of AUL=s profits as a result of its practices; and an award of costs and attorney=s fees.

Count II claims that AUL=s shared-revenue practices violate specific ERISA prohibitions against a fiduciary engaging in certain transactions, specifically 20 U.S.C. ' 1106(b)(1) (Adeal[ing] with the assets of the plan in his own interest or for his own account@) and (b)(3) (Areceiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan@).   This Count claims that AUL violated these prohibitions in two ways:   first, by taking shared revenue from its own proprietary Aseparate accounts@ and, second, by receiving shared revenue from non-proprietary mutual funds as consideration for the investment of plan assets in those mutual funds.

Count III is not a separate substantive claim but only a request for relief in the form of a permanent injunction against AUL=s engaging in revenue sharing without (1) full disclosure to and

arms-length approval of an independent fiduciary of each plan; (2) offsetting shared revenue against administrative fees owed by the plans to AUL; and (3) crediting the plans with the amount of shared revenue that exceeds the administrative fees owed by the plans.

Count IV claims that AUL is liable as a non-fiduciary to the Plan and the potential class members on two grounds.   First, the Trustee alleges that AUL is liable because non-disclosure of the existence and details of its revenue-sharing practices prevented the Trustee (and putative class members) from complying with ERISA=s statutory requirement that plan fiduciaries discharge their duties in order to defray reasonable expenses of administering their plans.   29 U.S.C. ▪ 1104(a)(1)(A)(ii).[4]   Without awareness of the existence and details of AUL=s receipts of shared revenues from the mutual funds, the plans=fiduciaries were unable to disapprove the practice or to demand that AUL=s shared revenues be offset against plan-paid administrative fees and/or that excess shared revenues be credited to the plans=accounts.

The second claimed ground for AUL=s liability as a non-fiduciary is that it has been a party to ERISA prohibited transactions, namely the direct or indirect transfer to, or use by or for the benefit of, a party in interest of plan assets, in violation of 29 U.S.C. ▪ 1106(a)(1)(D).[5]   This Count asserts that AUL is a Aparty in interest@because it provides services to the plans.   29 U.S.C. ▪ 1102(14)(B).   The Trustee asserts that the shared revenues that AUL received belong to the plans and are, thus, Aplan assets@because (a) AUL was able to extract the shared revenue from the

---

[4] This is one of the two exclusive purposes mandated in paragraph (a)(1):   Aa fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and – (A) for the exclusive purpose of:   (I) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan….@ 29 U.S.C. ▪ 1104(a)(1).

[5] AA fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect – transfer to, or use by or for the benefit of a party in interest, of any assets of the plan….@ 29 U.S.C. ▪ 1106(a)(1)(D).

6

mutual funds only because of the enormous bargaining power AUL enjoyed as service provider to the plans and administrator of the plans=assets; (b) AUL was able to receive and keep the shared revenue only because it failed to disclose the payments to the plans=fiduciaries, thus preventing the plans=fiduciaries from stopping the practice and allowing AUL to reap windfall revenues at the expense of the plans and their participants which it Ashould not in fairness and good conscience be permitted to retain;@ and (c) AUL is not entitled to more than a reasonable fee, from all sources, for its services.   The Trustee alleges that the Atransactions@ at issue are the contracts that the plans= fiduciaries entered into with AUL to administer their plans.   Therefore, in sum, this Count claims that the plaintiff class members (fiduciaries) caused their plans to enter into contracts (transactions) with AUL (a party in interest), the direct or indirect results of which were AUL=s receipt of shared revenues (plan assets), which constitute prohibited transactions in violation of ERISA.

## II.
### DISCUSSION

AUL moves for judgment on the pleadings on all counts of the complaint.   It argues that all of the Trustee=s claims are foreclosed by the Seventh Circuit=s decision in *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), *cert. denied*, 130 S.Ct. 1141 (2010).   Because both parties push and pull at the contours of the *Hecker* opinion, a synopsis is necessary before the Court can apply *Hecker* to the allegations in this action.

### A.  *Hecker*

In *Hecker*, the plaintiffs were employees of Deere & Co. ("Deere") and participants in its ERISA-qualified pension plans.   Deere was the plan=s sponsor.   The two remaining  defendants were affiliated companies:   Fidelity Management Trust Co. (AFidelity Trust@, the directed trustee

7

and record-keeper for the plan; and Fidelity Management & Research Co. ("Fidelity Research"),
the investment advisor for the Fidelity-affiliated mutual funds offered as investment options in
Deere's plan to its participants.   Deere hired Fidelity Trust to serve as trustee of the plans with the
tasks of advising on investment options to include in the plans, administering the participants'
accounts, and keeping the plans' records.   The plans offered 27 specific investment options to
participants – 23 Fidelity-affiliated mutual funds, 2 investment funds managed by Fidelity Trust,
and one fund devoted to Deere & Co. stock – and a Fidelity-operated brokerage facility that
enabled participants to access approximately 2,500 other, independent funds.   Deere and Fidelity
Trust agreed to limit the funds offered to participants as investment options to Fidelity-affiliated
funds with the exception of the Deere stock fund, other minor options, and the brokerage facility.
Fidelity Research advised the Fidelity-affiliated funds.   The plans' participants decided for
themselves where to invest their 401(k) money among the offered funds.   All of the Fideli-
ty-affiliated funds offered to the participants were also available to other investors in the open
market.

Each of the Fidelity-affiliated investment funds included in the plans charged an as-
set-percentage, or expense-ratio, fee that was paid to Fidelity Research for its advising services.
Fidelity Research, in turn, shared part of its fees with Fidelity Trust.   Initially, Deere also paid a
fee to Fidelity Trust as compensation for its trustee and plan-administration services, but this fee
was gradually reduced as the parties shifted Fidelity Trust's compensation from the fee to the
shared revenue that it received from Fidelity Research.   Ultimately, Deere & Co.'s fee payments
were eliminated, and all of Fidelity Trust compensation for its services to the plans was obtained
from its shared revenue.

8

Dissatisfied by the levels of expense-ratio fees charged by the funds, the plaintiffs sued Deere, Fidelity Trust, and Fidelity Research, claiming that each breached the fiduciary duties that they owed to the plans in the following ways:  (1) the fees charged by Fidelity Research were excessive and unreasonable because they exceeded its actual and reasonable advisory costs in order to generate additional money to share with Fidelity Trust; (2) Deere and Fidelity Trust selected investment options with unreasonably high fees; and (3) Deere failed to properly monitor the Fidelity companies=conduct and to disclose the revenue-sharing practice to participants.   The plaintiffs asserted that all three defendants were fiduciaries of the plans.[6]

The Seventh Circuit first examined whether the Fidelity defendants were fiduciaries. There was no dispute that they were not named as fiduciaries in the plan; rather, the plaintiffs asserted that they were Afunctional fiduciaries@as defined in 29 U.S.C. ▪ 1002(21)(A):

> . . . a person is a fiduciary with respect to a plan to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

As is relevant to the present case, the Court held that the Fidelity defendants=practice of revenue sharing did not confer on them discretionary authority or control over disposition of the plans= assets because the expense-ratio fees were collected from the assets of the mutual funds which, as provided in ERISA, 29 U.S.C. ▪ 1101(b)(1), are not assets of the plans.  Because the Fidelity defendants were not fiduciaries, they could not have breached any duties, and the Court concluded

---

[6] Unlike the Trustee, the *Hecker* plaintiffs did not claim that any of the defendants engaged in Aprohibited transactions@under ERISA.

that the plaintiff participants failed to state a claim against them.

The Court next considered the claims against Deere, an undisputed fiduciary of the plans. The plaintiffs claimed that it breached its duty by failing to disclose the revenue-sharing arrangements between the Fidelity defendants and by agreeing to limit the plans= investment options to Fidelity-affiliated funds that had excessively high fees.[7]   The Court found that Deere had no duty to disclose to plan participants the fact of the Fidelity defendants= revenue sharing.   First, it held that the practice itself was not disclosable as a violation of ERISA:

> Critical to plaintiffs= case is the proposition that Deere and Fidelity had a duty to disclose the revenue-sharing arrangements that existed between Fidelity Trust and Fidelity Research.   . . . .
>
> The Hecker group=s case depends on the proposition that there is something wrong, for ERISA purposes, in that arrangement.   The district court found, to the contrary, that such an arrangement (assuming at this stage that the Complaint accurately described it) violates no statute or regulation.   We agree with the district court.[8]   Plaintiffs feel misled because the SPD [summary plan description] sup-

---

[7] Presumably, Fidelity Research=s fees collected from the mutual funds were alleged to be excessive because they included the extra amounts – above and beyond its actual and reasonable costs for advising the funds – that were shared with Fidelity Trust.

[8] The Seventh Circuit described the district court=s findings on this point:

> Looking first at plaintiffs= claims against Deere, the district court found that the company had complied with all applicable disclosure requirements found in ERISA.   It saw nothing in the statute or regulations that required Deere to disclose the fact that Fidelity Research was sharing part of the fees it received with its corporate affiliate, Fidelity Trust.   Materials furnished to plan participants did disclose the expenses actually paid to the fund managers, as plaintiffs implicitly conceded by alleging that the same fees were charged to all retail fund customers. The district court found it unremarkable that those fees included some profit margin for Fidelity Research.   It also thought it Aunlikely@ that the fund sponsor (Deere) would be able to control the way in which the fund manager distributed its profits, particularly among related corporations.   The court also noted that there were proposals to amend the regulations so that revenue sharing arrangements would be disclosed.   See Proposed Rules, Department of Labor, Employee Benefits Security Administration, 71 Fed.Reg. 41,392, 41,394 (July 21, 2006).   This, it

plements left them with the impression that Deere was paying the administrative costs of the Plans, even though in reality the participants were paying through the revenue sharing system we have described.   But, as Deere and Fidelity both point out and the Complaint acknowledges, the participants were told about the total fees imposed by the various funds, and the participants were free to direct their dollars to lower-cost funds if that was what they wished to do. The SPD supplements told participants to look to the fund prospectuses for detailed information on fund-level expenses, and the prospectuses in fact furnished that information.   . . . .

The fact that there were no *additional* fees borne by Deere is immaterial. While Deere may not have been behaving admirably by creating the impression that it was generously subsidizing its employees=investments by paying something to Fidelity Trust when it was doing no such thing, the Complaint does not allege any particular dollar amount that was fraudulently stated.   How Fidelity Research decided to allocate the monies it collected (and about which the participants were fully informed) was not, at the time of the events here, something that had to be disclosed. It follows, therefore, that the Hecker group failed to state a claim against Deere based on the revenue-sharing arrangement and the lack of disclosure about it.

*Hecker*, 556 F.3d at 585.   The Court then considered whether Deere had a general fiduciary duty

under 29 U.S.C. ▪ 1104(a)(1) to disclose the practice as a material fact:

These conclusions go a long way toward disposing of plaintiffs=claims that the non-disclosure of the revenue-sharing breached the general fiduciary duty imposed on Deere by 29 U.S.C. ▪ 1104(a)(1).   Before such a violation can be found, there must be either an intentionally misleading statement, see *Varity Corp. v. Howe*, 516 U.S. 489, 505, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), or a material omission, see *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 992 (7th Cir.1993).   The Complaint does not allege that the representation in the SPD supplement – that Deere paid the administration expenses for the Plans – was an intentional misrepresentation.   To the contrary, plaintiffs have since submitted evidence with their Rule 59(e) motion showing that Deere believed that Fidelity Trust=s services were free.

The only question is thus whether the omission of information about the revenue-sharing arrangement is material.   Deere disclosed to the participants the

thought, made it apparent that the present rules imposed no such obligation.   Finally, the court rejected the plaintiffs=argument that disclosure was required as a general matter of ERISA law.

*Hecker*, 556 F.3d at 580.

total fees for the funds and directed the participants to the fund prospectuses for information about the fund-level expenses.   This was enough. The total fee, not the internal, post-collection distribution of the fee, is the critical figure for someone interested in the cost of including a certain investment in her portfolio and the net value of that investment.   Plaintiffs argue that some investors may have expected better management from a fund with a higher fee, but, as the Magellan Fund Prospectus illustrates, participants had access to information about management expenses as a percentage of fund assets.   The later distribution of the fees by Fidelity Research is not information the participants needed to know to keep from acting to their detriment.   See *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 589-91 (7th Cir.2000).   The information is thus not material, and its omission is not a breach of Deere's fiduciary duty.

*Id*. at 585-86.

### B.  Applying *Hecker* Here

AUL argues that judgment should be entered against Count I of the Complaint because *Hecker* declares that: 1) ERISA imposes no duty on AUL to disclose receipt of shared revenue because the practice itself does not violate ERISA, and 2) revenue sharing is not material information to the participants if the full amount of the mutual funds= fees is disclosed.   It is undisputed that the full amount was disclosed in this case.   AUL reiterates the district court=s rationale in *Hecker*, affirmed by the appellate court, that current congressional and administrative considerations for requiring such disclosures confirm that there is currently no requirement for disclosure.

AUL also argues that *Hecker* forecloses the Trustee=s claims in Count II that, by accepting shared revenue, AUL engaged in transactions from which fiduciaries are specifically prohibited under ERISA.   According to AUL, both prohibitions that Count II alleges were violated, 29 U.S.C. ▪ 1106(b)(1) (dealing with the assets of a plan for a fiduciary=s own benefit) and (b)(3) (fiduciary receiving consideration from someone who has dealt with the plan in connection with a transaction involving the assets of the plan) require involvement with plan assets.   According to AUL, *Hecker* clearly held that, under 29 U.S.C. ▪ 1101(b)(1), the mutual-fund assets out of which

shared revenue is collected are not plan assets.

Finally, AUL argues that judgment should be entered on Count IV for several reasons. First, on the claim that AUL=s non-disclosure of revenue sharing prevented the Trustee from fulfilling his fiduciary duty to keep plan costs low and reasonable, AUL argues that *Hecker* held that plan fiduciaries are not required to Ascour the market to find and offer the cheapest possible fund.@ *Hecker*, 556 F.3d at 586.  In addition, relying on the court=s pre-reconsideration decision in *Ruppert v. Principal Life Insurance Co.*, No. 4:07-cv-00344-JA-TJS, Order, 2009 WL 5667708 (S.D. Iowa, Nov. 5, 2009), *jmt. vacated in part on reconsideration*, Order [dkt. 205] (S.D. Iowa, March 31, 2010), AUL argues that plan fiduciaries do not have greater rights to disclosure than plan participants and that *Hecker* clearly held that there is no duty to disclose revenue sharing to plan participants.   AUL asserts that a contrary holding is untenable because, if the fact of revenue sharing by service providers is found to be material to plan fiduciaries and thus disclosable, then plan fiduciaries also would be required to disclose such material facts to their participants, clearly contrary to *Hecker*=s holding.   Second, on the claim that AUL is liable for engaging in prohibited transactions as a non-fiduciary, AUL argues, again, that the claim is foreclosed by *Hecker*=s clear holding that revenue-sharing payments from mutual fund advisors to service providers are not paid from plan assets

Several significant differences between the record in this case and that in *Hecker* mean that the application of *Hecker*=s holdings will, however, be a more complicated inquiry than argued by AUL.  First, *Hecker* addressed the duty to disclose the fact and details of revenue sharing to a plan=s participants and beneficiaries, not to a plan=s fiduciary (i.e. the Trustee) as is alleged in the present case.  Equally significant, for purposes of the Court's ruling on this motion, AUL has not

disputed its alleged status as a Plan fiduciary.   Second, *Hecker* did not address any claim con-

cerning whether a service provider who receives and keeps shared revenue engages in prohibited

transactions.   Finally, the Court notes that the *Hecker* court had a more richly developed record

than is present here.   In ruling on the Hecker group's petition for rehearing *en banc,* the Seventh

Circuit emphasized that its holding was based on – and therefore limited to – the factual record

before it.   *Hecker v. Deere & Co.,* 569 F.3d 708, 710 (7th Cir. 2009) (denying rehearing and re-

hearing *en banc*) ("The panel's opinion, however, stands for no such broad proposition. It was

limited to the complaint before the court, as supplemented by the materials the panel found were

properly before the district court.").   Therefore, determining the applicability of *Hecker* to each of

the Trustee's claims will require a careful parsing of its rationale, and a careful comparison of the

record here.

### 1.   Count I

Because, as noted above, AUL has not disputed its fiduciary status, the "threshold ques-

tion" with respect to AUL's alleged breach of fiduciary obligations with respect to its actions in

Count I is satisfied.   *See Pegram v. Hendrich*, 530 U.S. 211, 226 (2000) ("In every case charging

breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some

person employed to provide services under a plan adversely affected a plan beneficiary's interest,

but whether that person was acting as a fiduciary…when taking the action subject to complaint.").

ERISA requires fiduciaries to discharge their duties for the purpose of defraying reasona-

ble expenses of administering the Plan.   29 U.S.C. ▪ 1104(a)(1)(A)(ii).   The Trustee has argued,

and AUL has not disputed, that knowledge about the total compensation that AUL receives for its

activities would be material to the Trustee's ability to defray reasonable Plan administrative ex-

penses; the Trustee wants to know all the sources of AUL's compensation so that the Trustee can

better negotiate the expenses that the Plan must pay.   [*See* dkt. 1 ¶24.]   Further, AUL has not

disputed the Trustee's allegation that the knowledge of the full compensation would be material to

the Trustee's duty to ensure that AUL's total compensation is reasonable given the services per-

formed.   *See* Dep't of Labor Opinion No. 97-15A ("[I]t is the view of the Department that the

responsible Plan fiduciaries must obtain sufficient information regarding any fees or other com-

pensation that [the Trustee] receives with respect to the Plan's investments in each mutual fund to

make an informed decision whether [the Trustee's] compensation for services is no more than

reasonable.").[9]

AUL relies on the Southern District of Iowa's first *Ruppert* decision, *supra*, for its argu-

ment that, notwithstanding its fiduciary status, it owed no duty of disclosure to the Trustee.   In

that case, the court entered judgment on the pleadings against the trustee, reasoning as follows:

> Ruppert would have the Court limit *Hecker's* holding by finding that fiduciaries
> have no duty to disclose revenue sharing payments to plan participants, while still
> requiring fiduciaries to disclose the payments to plan sponsors or other fiduciaries.
> This Court rejects such a narrow and limited reading of *Hecker*.   Fiduciaries do not
> have a greater right to information than the plan participants for whom they serve.
> Such a divergence in treatment would undermine the rationale behind *Hecker*.   For
> example, if revenue sharing disclosure to fiduciaries was deemed to be material,
> then the fiduciaries would have a fiduciary duty to inform the plan participants and
> beneficiaries of the revenue sharing; precisely the outcome that *Hecker* held
> against.

*Ruppert*, 2009 WL 5667708 at *14.

*Ruppert*, and by extension *Hecker* are, however, inapplicable to Count I's allegations of

wrongful nondisclosure.   As noted above, *Hecker*'s holding that Deere did not need to disclose its

---

[9] While *Hecker* notes that the Trustee has no obligation "to scour the market to find and offer the
cheapest possible fund," 556 F.3d at 586, AUL has not argued that a trustee is somehow prohibited
from reasonably attempting to locate better values.

revenue sharing to the plan participants arose in a fact-specific context:   (1) the Fidelity defendants involved in the shared revenue scheme were not fiduciaries, and (2) the plan participants had access to over 2,500 mutual funds beyond those that Deere and Fidelity Trust had selected for inclusion in the plan.   By contrast here, AUL has not disputed its fiduciary status, with its concomitant obligation to act "with the utmost candor, rectitude, loyalty, and good faith."   *Burdett v. Miller*, 957 F.2d 1375, 1387 (7th Cir. 1992).   And, unlike in *Hecker*, AUL makes no current claim that the Plan's beneficiaries could directly access the marketplace to invest in additional mutual funds if the beneficiaries thought that the funds that AUL pre-selected had excessive expenses. Indeed, the Eighth Circuit found *Hecker* inapplicable where only a "limited menu" of investment options was made available to participants, 588 F.3d 585, 596 & n.6 (8th Cir. 2009), thus prompting the *Ruppert* court to reverse its previous decision and permit further development of the "fact specific record" necessary to determine a potential breach of fiduciary duty, *see Ruppert v. Principal Life Insurance Co.*, No. 4:07-cv-00344-JA-TJS, [dkt. 205] (S.D. Iowa, March 31, 2010).

Here, Plan participants do not have the power or authority to determine the investment options available to them or to negotiate the costs associated with those investments; those decisions are vested in plan fiduciaries.   Disclosure of AUL's full compensation may not have been material to the Plan participants when selecting between and among the investments that AUL actually chose to offer them.   That information could, however, be material to the Trustee when negotiating over the expenses AUL would charge the Plan.   It could also be material when evaluating the propriety of the funds that AUL selected for the participants.[10]

The same rationale applies to *Hecker*'s effect on Count I's other alleged basis for AUL's

---

[10] So again, based upon the present, sparsely developed record, *Hecker* is inapposite to the issue of materiality.

16

breach of its fiduciary duty:   its receipt and retention of shared revenue without crediting it to the plans= accounts (by offsetting the administration fees owed by the plans to AUL and/or by paying to the plans any revenue that exceeded the actual and reasonable costs of administering the plans). In ruling on the participants= claims against Deere Abased on the revenue-sharing arrangement and the lack of disclosure about it,@ *Hecker*, 556 F.3d at 585, *Hecker* stated that the participants= case Adepended on the proposition that there is something wrong, for ERISA purposes@ with the practice of revenue sharing.   But the Seventh Circuit agreed with the district court that Asuch an arrangement . . . violates no [ERISA] statute or regulation@ and that Fidelity Research, the mutual-fund advisor, was free to allocate and share its expense-ratio fees with Fidelity Trust as it saw fit, without any obligation of disclosure.   But the revenue sharing in *Hecker* occurred between two non-fiduciaries to the Deere plan, whereas in this case, AUL is alleged to have received shared revenue as a plan fiduciary, with its attendant higher legal duties.   Therefore, *Hecker* also does not foreclose this alleged basis for AUL=s breach of fiduciary duty.

AUL has not shown that Count I fails to state a plausible claim.

## 2.   Count II

This count alleges that AUL, as a fiduciary, violated ERISA by engaging in prohibited transactions, namely dealing with plan assets for its own interest or account, 29 U.S.C. ' 1106(b)(1), and receiving consideration for its own account from a party dealing with the Plan in connection with a transaction involving plan assets, 29 U.S.C. ' 1106(b)(3).   AUL argues that, because both paragraphs (1) and (3) require involvement of plan assets, and because none were used here, the Trustee cannot state a claim that AUL=s practice of revenue sharing is a prohibited transaction.

### a. Section 1106(b)(1)

Section 1106(b)(1) states that "[a] fiduciary with respect to a plan shall not . . . deal with the assets of the plan in his own interest or for his own account." Both 29 U.S.C. § 1101(b)(1)[11] and *Hecker* declares that mutual-fund monies out of which shared revenue is paid are not plan assets, *Hecker*, 556 F.3d at 584.

The Trustee unsuccessfully seeks to avoid *Hecker's* holding by citing *Haddock v. Nationwide Financial Services, Inc.*, 419 F.Supp.2d 156 (D. Conn. 2006), in support of a "functional approach" to determining plan assets.   This approach holds that funds that are not plan assets in the hands of a non-fiduciary can become plan assets when a fiduciary receives them, if the funds can be used to benefit the fiduciary at the expense of plan participants or beneficiaries.   AUL argues that this decision is at odds with *Hecker*, and indeed the court in *Hecker* noted *Haddock* was neither helpful nor persuasive.   *Hecker* at 584.   While the adoption of a "functional" approach to the determination of fiduciary status finds support in *Hecker*, *see id.* at 583, the opinion is unequivocal that mutual-fund monies out of which shared revenue is paid are not plan assets, a view supported by the Department of Labor.   *Id.* at 584.

The Trustee further argues that shared revenue that AUL receives from its separate accounts constitute plan assets.   As noted above, separate accounts are AUL proprietary funds that are not qualified as investment companies.   The assets of separate accounts are considered plan assets.   29 C.F.R. § 2510.3-101(h)(1)(iii) (when a plan acquires or holds an interest in a separate

---

[11] "In the case of a plan which invests in any security issued by an investment company registered under the Investment Company Act of 1940, the assets of such plan shall be deemed to include such security but shall not, solely by reason of such investment, be deemed to include any assets of such investment company." 29 U.S.C. § 1101(b)(1).

account @its assets include its investment and an undivided interest in each of the underlying assets of the [separate account]@.   However, the Trustee's allegations and arguments are confused on AUL's receipt of shared revenue from its separate accounts.   Count II alleges that AUL violated " 1106(b)(1) by Ataking >revenue sharing= payments or fees from plan assets held in AUL's pro-prietary, unregistered >separate accounts= for AUL's own interest and for its own account . . . ,@ Complaint & 64(a).   But the Complaint also alleges that A[w]ith respect to AUL's proprietary funds . . . , on information and belief, AUL also takes undisclosed or inadequately disclosed >revenue sharing= payments or fees similar to those described above, although the details of how AUL negotiates, takes and/or receives those payments or fees are presently unknown to Plaintiff.@ *Id*. & 29.   AUL denied these allegations and unequivocally asserted that no shared revenue is paid from separate-account assets:   Anot a single penny of revenue sharing that AUL receives is paid out of any separate account.   Instead, the revenue is paid by the mutual fund companies – some AUL affiliates, some not – in which the separate accounts are invested.   As a result, no >plan as-sets= are involved in the transaction, and the transactions cannot be considered >prohibited.@ (Brief at 8).

AUL correctly argues that the Trustee has failed to plead a plausible claim that AUL takes shared revenue from the assets of AUL separate accounts.   While the Trustee responds that this is a factual question that is inappropriate to determine on the pleadings and that it is AUL's burden to disprove the allegations, the Trustee is mistaken.   Under the teachings of *Twombly*, the Trustee must allege sufficient factual support for his claim to push it across the line from the merely possible to the plausible.   Conclusions or bare recitations of elements are not enough.   In this case, the Complaint fails to cross that threshold with respect to AUL's alleged receipt of shared

revenue from separate-account plan assets.   While the Trustee points to Count II's express allegation that AUL takes revenue sharing from plan assets held in its separate accounts, Complaint ¶ 64(a), any favorable inference that the Court might be obliged to draw from that allegation on this motion is vitiated by the Complaint's other allegation that clearly states that the Trustee is unaware of how AUL negotiates, takes, and/or receives shared revenue from its proprietary funds – including its proprietary mutual funds, not just its separate accounts, *id*. ¶ 29.   Paragraph 29 states only that, based on unspecified "information and belief," AUL takes shared revenue "with respect to" its proprietary funds; it does not allege that AUL takes such revenue from any particular source, particularly from assets held in its separate accounts.   Instead, ¶ 29 is an admission of the Trustee's lack of factual support to render his claim plausible.   In light of ¶ 29, ¶ 64(a) is merely a conclusory recitation of an assertion, not an allegation of plausible fact.

For these reasons, the Court finds that (1) Count II fails to plead a plausible claim that AUL, as a fiduciary, violated 29 U.S.C. § 1106(b)(1) by receiving shared revenue from mutual-fund expense-ratio fees; and that (2) Count II fails to plead a plausible claim that AUL, as a fiduciary, violated § 1106(b)(1) by receiving shared revenue from plan assets held in its separate accounts.

### b.  Section 1106(b)(3)

AUL's brief in support of the instant motion mentions §1106(b)(3) only once, as a citation in support of the proposition that to prevail on Count II, the Trustee "must show that that challenged transactions involved 'assets of the plan.'"   (Opening Brief at 7.)   No further mention of §1106(b)(3) is made either in the original brief or AUL's reply.   AUL makes no argument as to the differences between a prohibited transaction prohibited under (b)(1) and one under (b)(3).   It

simply – and apparently – relies on its argument concerning §1106(b)(1)'s prohibition against a fiduciary dealing with the assets of the plan in his own interest or for his own account

But §1106(b)(3) states a separate prohibition than §1106(b)(1).  A violation of section 1106(b)(3) can occur in a less direct manner than self-interested dealing with plan assets proscribed in (b)(1).  Under its plain text, a (b)(3) violation can occur if a fiduciary receives "any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving assets of the plan."  While *Hecker* may conclusively establish that shared revenue is not a plan asset, the opinion does not address whether shared revenue can be deemed the type of consideration "from a party dealing with the plan in connection with a transaction involving assets of the plan."  The undeveloped record and argument in this case preclude judgment at this time.[12]  Absent cogent argument, AUL has not demonstrated that it is entitled to judgment on Count II's allegation of a prohibited transaction under 29 U.S.C. ▪ 1106(b)(3).

### 3.   Count IV

Count IV claims that AUL is liable as a non-fiduciary on two grounds:  first, because AUL=s failure to disclose its participation in revenue sharing prevented the Trustee from fulfilling his fiduciary duty to the plan and, second, because AUL participated in a violation of 29 U.S.C. ▪ 1106(a)(1)(D).

The Trustee provided no legal authority, under ERISA or in caselaw, subjecting non-fiduciary third parties to liability if they fail to disclose information that would facilitate a

---

[12] *See Haddock* at 171 ("[A] reasonable fact-finder could conclude that Nationwide received consideration (i.e., the revenue-sharing payments) from a party dealing with the Plans (i.e., the mutual funds whose shares are available for investment by the Plans and participants) in connection with a transaction (i.e., the so-called service contracts) involving assets of the plan (i.e., the shares of the variable accounts, represented by the accumulation units).").

fiduciary=s fulfillment of his fiduciary duties.   If that result were accepted, then the same principle would subject non-fiduciaries to liability for any acts or omissions that hindered a fiduciary in accomplishing any of his fiduciary duties.   Such liability would in effect impose fiduciary duties on non-fiduciaries, an untenable result.   The Trustee asserts that he had a need for the information in order fulfill his duty to defray the reasonable expenses of the Plan and that AUL=s silence about its revenue sharing, by hiding the relevant facts, prevented him from acting to stop the revenue sharing or demanding that AUL credit the Plan with the revenue received.   The Trustee had the ability to fulfill his duty regarding Plan expenses by inquiring of AUL about the practice of rev- enue sharing specifically or inquiring about all payments AUL received that had any relationship to the Plan=s investments or AUL=s work for the Plan, and then taking appropriate measures to protect the plan if the answers were unsatisfactory.   But, without citation to legal authority, the Court does not agree with the Trustee that his need or desire for information alone states a plausible claim against AUL, as a non-fiduciary, for failure to disclose its participation in revenue sharing.

29 U.S.C. ▪ 1106(a)(1)(D) provides:   AA fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan . . . .@   AUL is a Aparty in interest@ with respect to the Plan because it provides services to the Plan.   29 U.S.C. ▪ 1002(14)(B).   A plan participant, beneficiary, or fiduciary may bring a civil action against a non-fiduciary party-in-interest to enjoin any violation of ▪ 1106(a)(1)(D).   29 U.S.C. ▪ 1132(a)(3); *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000).   The Trustee claims that AUL=s nondisclosure of its receipt of shared revenue led him to

cause the Plan to enter into contracts with AUL to provide services to the Plan, which contracts constituted an indirect transfer of plan assets to AUL in the form of shared revenue.

This claim is precluded to the extent that it is based on AUL's receipt of shared revenue from mutual funds because 29 U.S.C. ' 1101(b)(1) and *Hecker* declare that shared revenue that is distributed from expense-ratio fees that are paid from mutual funds= assets do not constitute plan assets. Therefore, the Atransactions@ that Count IV alleges – *i.e.*, the Plan's contracts with AUL – did not constitute direct or indirect transfers of plan assets to AUL in the form of shared revenue. The Trustee argues that the claim can be saved because A[t]o the extent any such payments or fees [*i.e.*, revenue sharing] come from separate accounts, they come directly from plan assets.@ (Response at 26). But this argument suffers from the same pleading deficiency that doomed Count II's claim that AUL violated ' 1106(b)(1) by receiving shared revenue from its separate accounts: there are insufficient facts pled to state a plausible claim that AUL took shared revenue from plan assets in its separate accounts. The claim cannot proceed only on the speculation C the conditional speculation – that, Ato the extent any such payments or fees come from separate accounts, they come directly from plan assets.@ There must be sufficient factual support pled to render it plausible that AUL actually took shared revenue from the separate accounts= plan assets and there are no such facts alleged in the Complaint.

AUL's motion for judgment on the pleadings on Count IV is granted.

## III.
### CONCLUSION

AUL's motion for judgment on the pleadings [dkt. 47] is **GRANTED IN PART AND DENIED IN PART**. The motion is **DENIED** as to Count I in its entirety and Count II, to the

extent that it claims that AUL, as a fiduciary, violated 29 U.S.C. ▪ 1106(b)(3). The motion is

**GRANTED** as to Count II, to the extent that it claims that AUL, as a fiduciary, violated 29 U.S.C.

▪ 1106(b)(1) and as to Count IV in its entirety.   Count III is a prayer for injunctive relief and

asserts no substantive claims, and will survive only in conjunction with the substantive claims that

remain.

No partial judgment shall issue as to the claims resolved in this Entry; final judgment will

issue at the conclusion of all the proceedings.

**SO ORDERED.**

10/22/2010

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution:**

Klint L. Bruno
KOREIN TILLERY LLC
kbruno@koreintillery.com

Amanda C. Couture
DELANEY & DELANEY
acouture@delaneylaw.net

Edward O'Donnell DeLaney
DELANEY & DELANEY LLC
ed@delaneylaw.net

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Joel S. Feldman
SIDLEY AUSTIN LLP
jfeldman@sidley.com

Bart A. Karwath
BARNES & THORNBURG LLP
bart.karwath@btlaw.com

Robert L. King
KOREIN TILLERY, LLC
rking@koreintillery.com

Robert D. MacGill
BARNES & THORNBURG LLP
rmacgill@btlaw.com

Eric S. Mattson
SIDLEY AUSTIN LLP
emattson@sidley.com

Sarah H. Newman
SIDLEY AUSTIN LLP
snewman@sidley.com

Dennis P. Stolle
BARNES & THORNBURG LLP
dstolle@btlaw.com

Eric Hyman Zagrans
eric@zagrans.com