**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ROBERT V. LEIMKUEHLER, as trustee of and on behalf of LEIMKUEHLER, INC. PROFIT SHARING PLAN, and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | CAUSE NO.:  1:10-CV-333- JMS-TAB |
| v. | ) ) | Hon. Jane Magnus-Stinson |
| AMERICAN UNITED LIFE INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

**DEFENDANT AMERICAN UNITED LIFE INSURANCE COMPANY'S**
**AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant American United Life Insurance Co. ("AUL") states the following for its

Amended Answer, Affirmative Defenses, and Counterclaims against Plaintiff, Robert V.

Leimkuehler ("Leimkuehler"), as Trustee of the Leimkuehler, Inc. Profit Sharing Plan (the

"Plan").  AUL's Answer is unchanged from its Answer as filed on October 9, 2009, and is

repeated here for completeness and clarity only.

## ANSWER

Defendant American United Life Insurance Company ("AUL"), for its Answer and

Affirmative Defenses to Plaintiff's Class Action Complaint ("Complaint"), states as follows:

## PARTIES

1.      Leimkuehler is a trustee of the Plan and brings this action in such capacity.
Leimkuehler, Inc. has its principal place of business in Cleveland, Ohio.

**ANSWER:**  On information and belief, AUL admits that Plaintiff Robert Leimkuehler is a trustee of the Leimkuehler, Inc. Profit Sharing Plan (the "Plan") and admits that Plaintiff purports to bring this action in that capacity.  On information and belief, AUL admits that Leimkuehler, Inc. has its principal place of business in Cleveland, Ohio.

2.      The employee-participants of the Plan are employees of Leimkuehler, Inc.

**ANSWER:**  AUL lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2.

3.      AUL is a full-service retirement plan provider having its principal place of business in Indianapolis, Indiana.  AUL advertises its services, solicits retirement plan business and actually does business within this judicial district.

**ANSWER:**  AUL admits that it provides services to retirement plans.  AUL admits that it solicits retirement plan business and does business in this judicial district.  AUL denies the remaining allegations of paragraph 3.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1)(2), codified at 29 U.S.C. § 1132(e)(1)(2).

**ANSWER:**  Admitted.

5.      Venue is proper within this judicial district, pursuant to the provisions of ERISA § 502(e)(2), codified at 29 U.S.C. § 1132(e)(2), because AUL does business in this District and many of the events or transactions alleged herein occurred within this judicial district, including without limitation AUL's solicitation of business from, and its ongoing business with, the Plan.

**ANSWER:**  AUL admits that it does business in this district.  AUL admits that venue is technically proper in this district, but denies that this district is the appropriate venue for the reasons explained in its motion to transfer venue.  AUL denies the remaining allegations of paragraph 5.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

**A.**     *AUL's Employer-Sponsored 401(k) Plan "Full Service" Packages*

6.     AUL offers "full service" 401(k) retirement plans to employers who wish to provide retirement plans for their employees.

**ANSWER:**  Denied.

7.     AUL furnishes all plan documents and related services necessary for employers to establish and provide 401(k) retirement plans for their employees.

**ANSWER:**  AUL admits that the allegations of paragraph 7 are true with respect to some

plan customers, but denies that they are true with respect to all customers.

8.     AUL provides employers with complete plan administration services, legal compliance services and consulting services.  Those services include daily updates of plan records, a program for distribution of benefits to employees, investment reports to employees, pre-printed employee newsletters, and signature-ready government forms, AUL provides such services so that "plan sponsors don't need to have all the answers, just our phone number to give to their participants." [citation]

**ANSWER:**  AUL admits that it offers a variety of services to employers that sponsor

retirement plans, including some of the services enumerated in paragraph 8, but denies that every

such employer chooses to utilize all or any of those services.

9.     From approximately 8,000 mutual funds available for investment in the United States, AUL negotiates agreements with a much smaller, select group of mutual funds that AUL then offers as investment options in its pre-packaged 401(k) retirement plans.

**ANSWER:**  Denied.

10.     In addition to such mutual funds, AUL has its own proprietary funds that it also offers as investment options in its pre-packaged 401(k) retirement plans.  These funds are "proprietary" in the sense they are established, owned and/or managed by AUL or an AUL-affiliated company.

**ANSWER:**  AUL admits that an AUL-affiliated company is organized as a series mutual

fund with five separate portfolios with investment managers who are AUL personnel.   AUL

denies the remaining allegations in paragraph 10.

11.     Some of AUL's proprietary funds are "investment companies" within the meaning of the Investment Company Act of 1940 and are accordingly registered with the SEC under that Act.  Conversely, other AUL proprietary funds are not "investment companies" within the meaning of the Investment Company Act of 1940 and are not registered with the SEC under the Act.  These funds are referred to as "separate accounts" rather than "mutual funds."  AUL's proprietary mutual funds and separate accounts are collectively referred to herein as AUL's "proprietary funds."

**ANSWER:**  AUL admits that the AUL-affiliated company that is organized as a series

mutual fund is an open-ended investment company within the meaning of the Investment

Company Act of 1940.  The investment options available to any particular retirement plan vary

from plan to plan.  AUL denies the remaining allegations of paragraph 11.

12.     After AUL is chosen as an employer's 401(k) service provider, AUL selects and presents to the employer a menu of investment options, including non-proprietary mutual funds and/or AUL's proprietary finds.  The menu of investment options consists of a select and very small fraction of the total investment options AUL has available to offer to 401(k) plans and sponsors.

**ANSWER:**  Denied.

13.     When deciding which investment options to include in its 401(k) plan, an employer must choose from the menu of investment options AUL has pre-selected and presented to the employer.

**ANSWER:**  Denied.

14.     When AUL selects and presents a menu of investment options to an employer, AUL does not disclose to the employer the available share classes of the investment option because AUL selects the share class of investment option to be included in a 401(k) plan's lineup of available investment options.

**ANSWER:**  Denied.

15.     The difference between share classes of a mutual fund or separate account are the fees associated with that mutual fund or separate account.

**ANSWER:**  AUL admits that the allegations of paragraph 15 are generally true with

respect to share classes of a mutual fund.  AUL denies the remaining allegations of paragraph 15.

16.     Employees who participate in their employer-sponsored 401(k) plan select investment options from the menu of investment options already jointly pre-selected by AUL and the employer.

**ANSWER:**  Denied.

17.     AUL retains the discretion to (i) delete investment options, (ii) close them to future investments, or (iii) substitute other funds for those an employer chose to include in its 401(k) plan, all without the employer's consent.

**ANSWER:**  Denied.

18.     AUL exercises ultimate control over the investment options it makes available to the 401(k) plans it serves.

**ANSWER:**  AUL admits that it makes a wide variety of investment options available to retirement plans that choose to engage AUL as a service provider.  Except as expressly admitted herein, AUL denies the allegations of paragraph 18.

### B.     *AUL Takes Revenue Sharing Fees From Its Funds*

19.     Investment advisors to mutual funds charge fees to the funds they advise for the advisors' investment management services.  Such investment management fees are simply a percentage (expressed as "basis points") of the assets the advisor has under management in its mutual fund.

**ANSWER:** AUL admits that investment advisors to mutual funds charge fees for investment management services, with such charges varying from advisor to advisor and plan to plan and changing over time.  AUL denies the remaining allegations of paragraph 19.

20.     As a condition for a mutual fund's inclusion in AUL's pre-packaged 401(k) plans, AUL requires each mutual fund portfolio (or each fund's advisors, sub-advisors, distributors or affiliates) to pay a kickback to AUL, which AUL euphemistically describes as a "revenue sharing" fee.

**ANSWER:**  Denied.

21.     With very few (if any) exceptions, AUL selects for inclusion in its pre-packaged 401(k) plans only those mutual funds whose advisers (or distributors) agree to make "revenue sharing" kickback payments to AUL.

**ANSWER:** Denied.

22.     Due to the large number of 401(k) plans that AUL serves, AUL represents an extremely large amount of plan assets when it negotiates "revenue sharing" payments or fees which mutual funds and their advisors are eager to tap into.  Thus, AUL's ability to exact "revenue sharing" deals with mutual finds (or their advisors) is a direct result of AUL's representation of such massive amounts of employer-sponsored 40l(k) plan assets.

**ANSWER:** Denied.

23.     When the mutual fund advisors (or distributors) agree to pay "revenue sharing" kickbacks to AUL, they effectively agree to take a reduced fee for their investment management services.  Nevertheless, AUL and the mutua1 fund falsely represent to 401(k) plans, sponsors, trustees and participants that the mutual fund advisor's fee for its services to AUL's 401(k) plans is the full amount of the advisor's usual and customary fee.

**ANSWER:** Denied.

24.     The mutual fund advisor charges an amount equal to its usual fee, but the amount includes both the advisor's true fee plus the "revenue sharing" component which the advisor does not take as compensation for its services but instead takes strictly on behalf of and for the benefit of AUL.

**ANSWER:** Denied.

25.     AUL and the mutual funds misrepresent the advisor's fee as being more than it actually is to hide the "revenue sharing" component which the advisor does not take as compensation for its services but instead takes strictly on behalf of and for the benefit of AUL.

**ANSWER:** Denied.

26.     AUL takes and keeps such "revenue sharing" payments or fees for its own benefit.

**ANSWER:** Denied.

27.     AUL does not offset the fees that the 401(k) plans owe AUL for its services with the "revenue sharing" payments that AUL takes or receives.  AUL also does not credit the 401(k) plans it serves for any "revenue sharing" payments that AUL takes or receives which exceed the total fee a 401(k) plan would owe AUL for its services.

**ANSWER:** Denied.

28.     AUL exercises exclusive control and discretion over the negotiation of such investment management fees and "revenue sharing" payments or fees.

**ANSWER:**  Denied.

29.     With respect to AUL's proprietary funds (as defined in Paragraph 11 above), on information and belief, AUL also takes undisclosed or inadequately disclosed "revenue sharing" payments or fees similar to those described above, although the details of how AUL negotiates, takes and/or receives those payments or fees are presently unknown to Plaintiff.

**ANSWER:**  Denied.

30.     With respect to AUL's proprietary funds, AUL determines for itself (or in conjunction with AUL-affiliated companies) the "revenue sharing" amounts that AUL receives.

**ANSWER:**  AUL admits that revenue sharing occurs with respect to certain proprietary funds.  Except as expressly admitted herein, AUL denies the allegations of paragraph 30.

31.     As a direct result of AUL's "revenue sharing" practices, AUL controls or influences its own compensation for the services it renders to 401(k) plans.

**ANSWER:**  Denied.

**C.     _AUL is an ERISA Fiduciary to the 401(k) Plans It Serves_**

32.     ERISA makes certain persons "fiduciaries" based upon their functions without regard to whether they are formally designated as fiduciaries in plan documents:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, [or] (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so . . . .

29 U.S.C. § 1002(21)(A).

**ANSWER:**  AUL admits that Plaintiff has quoted a portion of 29 U.S.C. § 1002(21)(A) and admits that persons may become fiduciaries under ERISA without having been formally designated as such in plan documents.  AUL denies that it is a fiduciary under this section and denies the remaining allegations of paragraph 32.

33.     A special relationship of confidence, trust and/or superior knowledge or control existed between AUL and (i) employers who retained AUL for its pre-packaged 401(k) plan, and (ii) employees participating in an AUL 401(k) plan, as a result of one or more of the following events or circumstances:

(a)     AUL holds itself out to employers and employees as highly-skilled financial experts, possessing special knowledge and expertise;

(b)     AUL encourages employers and participating employees to place their utmost trust and confidence in AUL's management of their 401(k) plans;

(c)     AUL encourages employers and participating employees to place their utmost trust and confidence with their retirement savings in AUL's financial expertise and advice;

(d)     AUL claims to assume a position of trust and confidence, with respect to both employers and employees, by servicing and managing employer-sponsored 401(k) plans;

(e)     AUL claims to assume the responsibility of providing unbiased expertise and 401(k) plan management to employers and employees;

(f)     AUL claims to assume the responsibility of providing unbiased, expert investment advice to employers and employees;

(g)     AUL claims to assume the responsibility on negotiating on behalf of employers and employees favorable investment management fees with funds as a result of AUL's control over the selection of funds made available to its 401(k) plans; and/or

(h)     AUL's exclusive control over and knowledge of the negotiations of investment management fees and "revenue sharing" arrangements with funds.

**ANSWER:**  Denied.


34.     As explained below, AUL is an ERISA fiduciary because it:

(a)     exercises discretionary authority or discretionary control over the management of the 401(k) plans it serves;

(b)     exercises authority or control over the management or disposition of assets of the 401(k) plans it serves; and/or

(c)     provides investment advice for a fee to the 401(k) plans it serves.

**ANSWER:**  Denied.

8

**D.**     ***AUL is a Fiduciary Because It Exercises Discretionary Authority or Discretionary Control Respecting Plan Management.***

35.     AUL exercises discretionary authority or discretionary control respecting plan management by one or more of the following acts:

    (a)    selecting which non-proprietary mutual funds to offer to 401(k) plans;

    (b)    selecting the specific share class of non-proprietary mutual funds in which plan participants may invest;

    (c)    selecting which AUL proprietary funds to offer to 401(k) plans;

    (d)    selecting the specific share class of AUL proprietary funds in which plan participants may invest;

    (e)    retaining the authority to delete investment options, close them to future investments, or substitute other funds for those an employer had chosen to include in its 401(k) plan without that employer's consent;

    (f)    controlling or influencing AUL's own compensation through "revenue sharing" without full disclosure to, and the knowing, voluntary and arms-length approval of, an independent fiduciary of the 401(k) plans AUL serves; and/or

    (g)    providing complete plan management services so that "plan sponsors don't need to have all the answers, just our phone number to give to their participants."

**ANSWER:**  Denied.


**E.**     ***AUL is a Fiduciary Because It Exercises Authority or Control Respecting the Management or Disposition of Assets of the 401(k) Plans It Serves.***

36.     AUL exercises authority or control respecting the management or disposition of assets of the 401(k) plans AUL serves by one or more of the following acts:

    (a)    selecting which non-proprietary mutual funds to offer to 401(k) plans;

    (b)    selecting the specific share class of non-proprietary mutual funds in which plan participants may invest;

    (c)    selecting which AUL proprietary funds to offer to 401(k) plans;

    (d)    selecting the specific share class of AUL proprietary funds in which plan participants may invest;

    (e)    retaining the authority to delete investment options, close them to future investments, or substitute other funds for those an employer chose to include in its 401(k) plan without that employer's consent; and/or

    (f)    controlling or influencing AUL's own compensation through "revenue sharing" without full disclosure to, and the knowing, voluntary and arms-

length approval of, an independent fiduciary of the 401(k) plans AUL serves.

**ANSWER:**  Denied.

### E.  *AUL is a Fiduciary Because It Provides Investment Advice For a Fee.*

37.     As part of its marketing of pre-packaged plans, AUL touts to employers its "retirement expertise . . . services to make your life easier . . . and full-service solutions for your retirement needs."

**ANSWER:**  AUL admits that some but not all marketing and promotional materials include language similar but not identical to that quoted in the above paragraph.  AUL denies the remaining allegations of paragraph 37.

38.     AUL represents to employers that it "add[s] value by offering flexible products and services that assist a plan sponsor's employees with preparing for their future."

**ANSWER:**  AUL admits that some but not all marketing and promotional materials include language similar but not identical to that quoted in the above paragraph.  AUL denies the remaining allegations of paragraph 38.

39.     AUL also touts its "retirement industry leadership" and "top-notch investment portfolio" to employers, and represents that its "quality retirement plan products and trusted investment options . . . deliver value to clients and help individuals reach their financial goals."

**ANSWER:**  AUL admits that some but not all marketing and promotional materials include language similar but not identical to that quoted in the above paragraph.  AUL denies the remaining allegations of paragraph 39.

40.     Thus, AUL, holds itself out to employers, participating employees, and the 401(k) plans AUL serves as a highly-skilled financial expert, possessing special knowledge and expertise.

**ANSWER:**  Denied.

41.    AUL provides investment advice to employers, participating employees, and the 401(k) plans AUL serves by one or more of the following acts:

(a)    explicitly recommending particular investment options to employers and their 401(k) plans;

(b)    representing (either explicitly or implicitly) that the funds AUL pre-selects and offers are appropriate, sound retirement investments for 401(k) plans and their participants;

(c)    implicitly representing that the funds AUL continued to make available to 401(k) plans continued to be appropriate, sound retirement investments for 401 (k) plans;

(d)    selecting the specific share class of funds in which plan participants may invest;

(e)    providing to employee-participants AUL's "Investor Profile Questionnaire," which helps employees to determine their risk tolerance on a scale of 1 to 50; and/or

(f)    through "Retirement Needs Worksheet" which it used to help employees determine their investment risk tolerance and matching specific mutual funds to the employees' tolerance.

**ANSWER:**  Denied.

42.    AUL was therefore a fiduciary of plans such as the Plan within the meaning of ERISA § 3(21)(A), codified at 29 U.S.C. § 1002(21)(A).

**ANSWER:**  Denied.

43.    Accordingly, AUL owed certain fiduciary duties to plans such as the Plan and their plan participants under ERISA § 404(a)(1)(A) and (B), codified at 29 U.S.C. § 1104(a)(1)(A) and (B), including a duty to discharge its "duties with respect to a plan solely in the interest of the participants and beneficiaries and … for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

**ANSWER:**  Denied.

## CLASS ACTION ALLEGATIONS

44.    Plaintiff brings this class action in his capacity as Trustee of the Plan and on behalf of as class of all similarly situated trustees and/or plan sponsors of 401(k) retirement plans that AUL has served and from which it has received and kept "revenue sharing" fees or payments.  Plaintiff proposes the following tentative class definition, subject to refinement after discovery:

All trustees and plan sponsors of (and on behalf of) 401(k) retirement plans governed by the Employee Retirement Income Security Act of 1974 (ERISA) to which AUL provided services and which either included mutual funds from which AUL received revenue sharing payments or included AUL proprietary funds established, owned and/or managed by AUL or an AUL affiliated company.

Excluded from the Class are Defendant, AUL, all affiliated AUL companies and any 401(k) plans for which the excluded companies serve as plan sponsor.

**ANSWER:**  AUL admits that Plaintiff purports to bring this action on behalf of a class as described in paragraph 44.  AUL denies any class may properly be certified in this case and denies the remaining allegations of paragraph 44.

45.     Plaintiff is a member of the proposed Class and will fairly and adequately assert and protect the interests of the Class.

**ANSWER:**  Denied.

46.     Plaintiff's interests are coincident with, and not antagonistic to, those of other Class members.

**ANSWER:**  Denied.

47.     Plaintiff's claims are typical of those of the Class.

**ANSWER:**  Denied.

48.     Plaintiff has retained counsel experienced in ERISA class action litigation.

**ANSWER:**  AUL lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 48.

49.     The members of the Class are so numerous that joinder of all members is impracticable.  While Plaintiff cannot ascertain the exact number and identify of Class members prior to discovery, on information and belief there are thousands of Class members and their identity can be ascertained from AUL's books and records.

**ANSWER:**  Denied.

50.     This case presents questions of law or fact common to all Class members, and those common questions predominate over any questions affecting only individual members of the Class, including:

i.      whether AUL held itself out to employers and participating employees as a highly-skilled financial expert, possessing special knowledge and expertise;

ii.     whether AUL encouraged employers and participating employees to place their utmost trust and confidence in AUL's management of their 401(k) plans;

iii.    whether AUL encouraged employers and participating employees to place their utmost trust and confidence with their retirement savings in AUL's financial expertise and advice;

iv.     whether AUL assumed a position of trust and confidence, with respect to both employers and employees-participants, through AUL's management of their employer-sponsored 401(k) plans;

v.      whether AUL assumed the responsibility to provide unbiased expertise and 401(k) plan management to employers and employees;

vi.     whether AUL assumed the responsibility to provide unbiased, expert advice to employers and employees to the extent AUL provided investment advice to employers and employees;

vii.    whether AUL assumed the responsibility to employers and employees to negotiate favorable investment management fees with mutual funds and their advisors as a result of AUL's exclusive control over the selection of mutual funds to be included and available in its 401(k);

viii.   whether AUL's exclusive control over and knowledge of the negotiations of investment management fees and "revenue sharing" arrangements with funds;

ix.     whether AUL assumed a position of confidence, trust, or superior knowledge or control with respect to employers and participating employees, AUL's exclusive control, over and knowledge of the negotiations of investment management fees and "revenue sharing" arrangements with funds;

x.      whether AUL rendered investment advice to plans such as the Leimkuehler Plan and their participants;

xi.     whether AUL was a fiduciary to plans like the Leimkuehler Plan and their participants;

xii.    whether AUL breached a fiduciary duty to plans like the Leimkuehler Plan and their participants by demanding and keeping "revenue sharing" fees or payments from funds;

xiii.   whether AUL committed "prohibited transactions" in violation of ERISA §
406(b) by taking and keeping for its own benefit "revenue sharing" fees or
payments;

xiv.   whether AUL should be permanently enjoined from engaging in unlawful forms
of "revenue sharing" *(i.e.,* without full disclosure to and knowing, voluntary,
arms-length approval of an independent fiduciary of the 401(k) plans AUL serves,
without offsetting "revenue sharing" payments or fees against amounts plans owe
to AUL, and without crediting plans with "revenue sharing" payments or fees to
the extent they exceed the amounts the plans owe to AUL);

xv.   whether plans like the Leimkuehler Plan and their participants sustained damages
as a consequence of AUL's misconduct; and/or

xvi.   the amount of any such damages to the Class.

**ANSWER:**  Denied.


51.   A class action is a superior means for the fair and efficient adjudication of this
action because individual actions would or might result in:

(a)   inconsistent or varying adjudication with respect to individual class
members; and/or

(b)   hundred or thousands of cases creating a substantial and unnecessary
burden for the courts.

**ANSWER:**  Denied.


52.   The trial of this class action will be manageable because the claims and defenses
will be subject to class-wide proof.

**ANSWER:**  Denied.


**FIRST CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty)**


53.   Plaintiff repeats and incorporates by reference the allegations set forth in
Paragraphs One (1) through Fifty-two (52), inclusive, above as if the same were fully rewritten
herein.

**ANSWER:**  AUL incorporates by reference its responses to the foregoing paragraphs.

54.     AUL does not disclose, or does not adequately disclose, to the 401(k) plans AUL serves such as the Leimkuehler Plan, the fact that AUL negotiates and takes or accepts "revenue sharing" payments or fees with the funds that are included in its pre-packaged 401(k) plans.

**ANSWER:**  Denied.

55.     AUL does not disclose, or does not adequately disclose, to the 401(k) plans AUL serves such as the Plan, the amount of the "revenue sharing" payments or fees AUL negotiates with and receives from funds that are included in its pre-packaged 401(k) plans.

**ANSWER:**  Denied.

56.     Plans such as the Plan receive no extra services from AUL (in addition to the services for which the plans already pay) in consideration for the "revenue sharing" payments or fees AUL receives from funds.

**ANSWER:**  Denied.

57.     The "revenue sharing" payments or fees AUL takes are thus windfalls to AUL that serve only to increase AUL's income at the expense of the plans such as the Plan and ultimately at the expense of the participating employees.

**ANSWER:**  Denied.

58.     AUL breached the fiduciary duties it owed, pursuant to ERISA § 404(a)(1), codified at 29 U.S.C. § 1104(a)(1), to plans such as the Plan and its participants in one or more of the following ways:

    (a)     failing to disclose (or to disclose adequately) to plans such as the Plan, to employers, or to participating employees the fact that AUL negotiates "revenue sharing" payments or fees with funds included in AUL's prepackaged 401(k) plans;

    (b)     failing to disclose (or to disclose adequately) to plans such as the Plan, to employers, or to participating employees the fact that AUL takes "revenue sharing" payments or fees from funds included in AUL's pre-packaged 401(k) plans;

    (c)     failing to disclose (or to disclose adequately) to plans such as the Plan, to employers, or to participating employees the amount of the "revenue sharing" payments or fees that AUL takes from funds included in AUL's pre-packaged 401(k) plans;

    (d)     keeping "revenue sharing" payments or fees from funds for AUL's own benefit;

(e)     failing to offset the fees 401(k) plans owe AUL for its services with the "revenue sharing" payments or fees AUL takes;

(f)     failing to credit to the 401(k) plans it serves any "revenue sharing" payments AUL takes which exceed the total fee a 401(k) plan owes to AUL for its services;

(g)     failing to use the "revenue sharing" payments or fees to defray the reasonable expenses of administering the plan; and/or

(h)     failing to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

**ANSWER:**  Denied.

59.     The Plan and the Class members have sustained and continue to sustain damages as a direct and proximate result of AUL's breaches of fiduciary duty.

**ANSWER:**  Denied.

60.     Pursuant to ERISA § 409(a) (29 U.S.C. § 1109(a)), AUL is liable to the Plan and to the Class for its breaches of fiduciary duties to make good to such plans all losses resulting from each such breach, is liable to restore to each such plan all profits AUL realized as a result of each such breach, and is subject to such other equitable and remedial relief as the Court deems appropriate.

**ANSWER:**  Denied.

**SECOND CLAIM FOR RELIEF**
**(Prohibited Transactions)**

61.     Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs One (1) through Sixty (60), inclusive, above as if the same were fully rewritten herein.

**ANSWER:**  AUL incorporates by reference its responses to the foregoing paragraphs.

62.     ERISA § 406(b)(1), codified at 29 U.S.C. § 1106(b)(1), prohibits fiduciaries from "deal[ing] with the assets of the plan in his own interest or for his own account."

**ANSWER:**  AUL admits that Plaintiff quotes a portion of 29 U.S.C. § 1106(b)(1), but denies that AUL has engaged in any prohibited transaction.

63.     ERISA § 406(b)(3), codified at 29 U.S.C. § 1106(b)(3), prohibits fiduciaries from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

**ANSWER:**  AUL admits that Plaintiff quotes a portion of 29 U.S.C. § 1106(b)(1), but denies that AUL has engaged in any prohibited transaction.

64.     AUL violated ERISA §§ 406(b)(1) and/or 406(b)(3) in one or more of the following ways:

(a)     taking "revenue sharing" payments or fees from plan assets held in AUL's proprietary, unregistered "separate accounts" for AUL's own interest and for its own account; and/or

(b)     receiving consideration in the form of "revenue sharing" payments or fees for AUL's own interest and for its own account from funds in connection with the 401(k) plans' investments of plan assets in such mutual funds.

**ANSWER:**  Denied.

## THIRD CLAIM FOR RELIEF
### (AUL as ERISA Fiduciary)

65.     Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs One (1) through Sixty-four (64), inclusive, above as if the same were fully rewritten herein.

**ANSWER:**  AUL incorporates by reference its responses to the foregoing paragraphs.

66.     AUL's "revenue sharing" practices violate ERISA §§ 404(a)(1) and 406(b)(1) and 406(b)(3) as alleged above with respect to plans such as the Plan.

**ANSWER:**  Denied.

67.     Pursuant to ERISA § 409(a), codified at 29 U.S.C. § 1109(a), the Court may and should enjoin AUL's unabated and unlawful "revenue sharing" practices (*i.e.*, without full disclosure to, and the knowing, voluntary and arms-length approval of, an independent fiduciary of the 401(k) plans AUL serves, without offsetting "revenue sharing" payments or fees against

amounts plan owe to AUL, and without crediting plans with "revenue sharing" payments or fees to the extent they exceed the amounts the Plans owe to AUL).

**ANSWER:** Denied.

## FOURTH CLAIM FOR RELIEF
### (<u>AUL as Non-Fiduciary</u>)

68.     In the alternative, and irrespective of AUL's status as an ERISA fiduciary, through AUL's "revenue sharing" it is subject to liability under ERISA for two distinct reasons:

(a)     AUL prevents Plaintiff and the Class members from discharging their ERISA § 404(a) fiduciary duty to their 401(k) plans – in many (if not most) cases, like Plaintiff's, unwittingly and in all cases without any way of avoiding that violation as a customer of AUL; and/or

(b)     AUL has entered into transactions with Plaintiffs s and Class members' 401(k) plans which constitute direct or indirect transfers to, or uses by or for the benefit of a party in interest, of assets of the plans.

**ANSWER:** Denied.

69.     Therefore, AUL is a party to an ERISA § 406(a) "prohibited transaction."

**ANSWER:** Denied.

70.     AUL has failed and continues to fail to disclose or adequately disclose sufficient information for Plaintiff and Class members to determine:

(a)     the existence of AUL's "revenue sharing" payments or fees;

(b)     the terms of AUL's "revenue sharing" payments or fees;

(c)     the amounts of AUL's "revenue sharing" payments or fees;

(d)     the amount of the total fees AUL receives for its 401(k) services to their respective plans;

(e)     the reasonableness of the total fees AUL receives for its 401(k) services to their respective plans;

(f)     whether AUL has offset its fees for its 401(k) services with the "revenue sharing" payments or fees it receives; and/or

 (g) the amounts AUL has received in "revenue sharing" payments or fees that exceeds AUL's total fee for its 401(k) services, and thus how much AUL should credit to Plaintiff's and Class members' respective 401(k) plans.

**<u>ANSWER</u>:** Denied.

71. AUL knows or should know that it has failed, and continues to fail, to provide sufficient information to Plaintiff and the Class members for them to determine the foregoing.

**<u>ANSWER</u>:** Denied.

72. Accordingly, AUL's misrepresentations and/or "revenue sharing" practices prevent Plaintiff and Class members from effectively discharging their duty to "defray[] reasonable expenses of administering" their plans, as is their duty under ERISA § 404(a).

**<u>ANSWER</u>:** Denied.

73. In addition, AUL is a "party in interest" because AUL is "a person providing services to [a] plan." ERISA § 402(14)(B), codified at 29 U.S.C. § 1102(14)(B).

**<u>ANSWER</u>:** Admitted.

74. As a direct or indirect result of the contracts that AUL enters into with the Plan and the Class members' plans, AUL receives "revenue sharing" payments or fees.

**<u>ANSWER</u>:** Denied.

75. The "revenue sharing" payments or fees AUL receives belong to Plaintiff's and Class member's 401(k) plans and are thus plan assets because:

 (a) AUL is able to negotiate lower fees and is able to extract "revenue sharing" payments or fees with funds their advisors, sub-advisors, distributors or other affiliates (with respect to mutual funds unrelated to AUL as well as AUL's proprietary funds (as defined in Paragraph 11 above) only because AUL represents Plaintiffs and Class members' 401(k) plans in those negotiations, and the collective plan assets of those 401(k) plans are an enormous sum which mutual funds and their advisors are eager to tap into;

 (b) the total amounts the mutual funds or AUL's proprietary finds charge as the fees of advisors, sub-advisors, distributors or other affiliates exceed the amounts those entities accept as compensation for their services, but AUL misrepresents the total amounts those entities charge as constituting their actual compensation for their services; accordingly, AUL should not in fairness and good conscience be permitted to retain the excess amounts

which AUL has misrepresented as "investment management fees" (or as similar kinds of fees) when, in reality, they were surreptitiously charged on behalf of, for the benefit of, and as a windfall to AUL in the form of "revenue sharing" payments or fees;

(c)    but for AUL's misrepresentations as alleged above and but for AUL's failure to disclose or adequately disclose the existence, terms, and amounts of the "revenue sharing" payments or fees AUL receives, Plaintiff and the Class members would be able to demand that those savings be applied toward AUL's total fees for its 401(k) services and that any amounts in excess of AUL's total fees be credited to the 401(k) plans; and

(d)    AUL is not entitled to more compensation than its total, reasonable fee.

**ANSWER:**  Denied.

76.    As a result of the foregoing, Plaintiff and the Class members have caused their 401(k) plans to enter into transactions with AUL, and those transactions constitute direct or indirect transfers to, or uses by or for the benefit of AUL, a party in interest, of assets of the plans.

**ANSWER:**  Denied.

77.    Therefore, AUL is a party to an ERISA § 406(a) "prohibited transaction."

**ANSWER:**  Denied.

78.    ERISA § 502(a)(3) authorizes Plaintiff and the Class members to bring suit against AUL for its knowing participation in the ERISA violations alleged in this count, and to obtain appropriate equitable relief to redress such violations.

**ANSWER:**  Denied.

\*   \*   \*

ANSWERING FURTHER, AUL DENIES ALL ALLEGATIONS THAT IT HAS NOT ADMITTED.

**SET OUT BELOW ARE AUL'S AFFIRMATIVE DEFENSES.  AUL RESERVES THE RIGHT TO AMEND OR ADD TO THESE DEFENSES IF AND WHEN ADDITIONAL INFORMATION BECOMES AVAILABLE.**

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

Some or all of AUL's conduct is statutorily exempt under ERISA.

### Third Affirmative Defense

Some or all of Plaintiff's causes of action are time-barred under the applicable statutes of limitations and/or statutes of repose.

### Fourth Affirmative Defense

Some or all of Plaintiff's claims are or may by barred in whole or in part by waiver.

### Fifth Affirmative Defense

Some or all of Plaintiff's claims are or may be barred in whole or in part by unclean hands.

### Sixth Affirmative Defense

Some or all of Plaintiff's claims may be barred in whole or in part by estoppel.

### Seventh Affirmative Defense

Some or all of Plaintiff's claims are barred under ERISA § 404(c), 29 U.S.C. § 1104(a)(1), which establishes a "safe harbor" where plans permit the participant to exercise control over assets. *See Hecker v. Deere & Co.*, 556 F.3d 575, 578 (7th Cir. 2009).  In *Hecker* – the only Court of Appeals opinion to address the propriety of revenue sharing – plan participants

alleged violations of ERISA as a result of the same sorts of practices challenged by Plaintiff here.  In addition to finding that revenue sharing was perfectly lawful, the court held that the alleged conduct was protected by ERISA § 404(c).  The statute provides that "if a participant or beneficiary exercises control over the assets in his account," then "no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control."  29 U.S.C. § 1104(c)(1).

Plaintiff's claims that AUL breached its alleged fiduciary duty are barred by the safe harbor defense of Section 404(c).  First, individual participants have control over the investments in their individual accounts.  Compl. ¶ 16.  Second, participants (and plans) enjoy a broad range of investment alternatives.  Further, AUL provides sufficient information about available investments, including prospectuses for each mutual fund.

## **Eighth Affirmative Defense**

Some or all of Plaintiff's claims are barred by the *in pari delicto* doctrine.

## COUNTERCLAIMS

AUL states the following for its Counterclaims against Robert V. Leimkuehler ("Leimkuehler"), as Trustee of the Leimkuehler, Inc. Profit Sharing Plan (the "Plan").

### NATURE OF ACTION

1.     Leimkuehler alleges that AUL acted as an ERISA fiduciary to the Plan. Leimkuehler alleges that AUL breached its alleged fiduciary duty to the Plan by failing to disclose "revenue sharing" payments.  Leimkuehler further alleges that AUL breached its alleged fiduciary duty by receiving and retaining revenue sharing without crediting it to the Plan. Additionally, Leimkuehler claims AUL is liable to the Plan for having engaged in prohibited transactions under 29 U.S.C. 1106(b)(3). These counterclaims are brought only in the event that AUL is found liable to the Plan under one or more of these theories.  They are asserted without prejudice to any other positions taken by AUL in this action.

2.     In his Complaint, Leimkuehler purports to bring this action on behalf of a class. AUL denies that this lawsuit may be maintained as a class action.  If a class is certified, however, AUL reserves its right to include some or all class members as counterclaim defendants.

### THE PARTIES

3.     Leimkuehler is a trustee of the Plan.  Leimkuehler, Inc. has its principal place of business in Cleveland, Ohio.

4.     AUL is an Indiana stock insurance company and has its principal place of business in Indianapolis.

**VENUE**

5.     This Court has subject matter jurisdiction over these Counterclaims pursuant to 28

U.S.C. § 1331 and 29 U.S.C. §§ 1132(e)(l) & (f), and Rule 13(a) of the Federal Rules of Civil

Procedure.

6.     Leimkuehler has consented to personal jurisdiction by pursuing this action in the

Southern District of Indiana.

7.     Venue is proper under 28 U.S.C. § 1391 because venue was transferred to this

District pursuant to 28 U.S.C. § 1404.

**FACTS**

8.     The Plan is a 401(k) retirement plan governed by ERISA.

9.     The Plan contracted with AUL to provide a funding vehicle and administrative

services to facilitate the funding and operation of the Plan.

10.     AUL issued the "Trustees of the Leimkuehler Inc Profit Sharing Plan" a Group

Annuity Contract numbered GA-30307 on June 13, 2000 with an effective date of June 1, 2000

(the "Contract").  On July 24, 2000, the Parties executed an Amendment to the Contract with an

effective date of June 1, 2000.  The Contract and the Amendment together constitute the

"Amended Contract."

11.     Leimkuehler and AUL entered into an associated New Business Agreement with

the Plan on or about June 13, 2000 (the "Agreement").  The benefits provided by the Amended

Contract and Agreement included the provision of investment options in which Plan participants

could invest.  Leimkuehler approved the investment options made available under the Amended

Contract and Agreement, approved the investment options offered to Plan participants through

the Amended Contract and Agreement, and approved all changes made to the investment options

offered to Plan participants.

12.     Leimkuehler had the authority and responsibility to make the ultimate decision as

to which investment options were appropriate for the Plan participants.   Leimkuehler exercised

that authority and never delegated that authority to AUL.

13.     The Plan and the Plan participants received the benefits and services provided for

in the Amended Contract and Agreement.  Furthermore, the Plan and the Plan participants paid

no more fees or charges than those set forth in the Amended Contract, Agreement and other

documents received by or available to Leimkuehler.

14.     The investment options selected by Leimkuehler and offered through the

Amended Contract included fees and charges assessed by the corresponding mutual funds (the

expense ratio).  The fees and services were accurately described in mutual fund prospectuses and

other documents received by or available to Leimkuehler.  Plan participants paid no more than

the fees that were set forth in the mutual fund prospectuses.

15.     The mutual fund families whose mutual funds were offered as investment options

paid fees to AUL in exchange for benefits and services provided by AUL to the mutual fund

families.  AUL's receipt and retention of these fees effectively reduced the fees the Plan or its

participants paid to AUL for services provided.  In other words, if AUL had not received revenue

sharing from the mutual fund companies, then it would have had to charge more in direct fees to

the Plan or its participants.

16.     Leimkuehler willingly accepted the benefits of AUL's services under the Amended Contract and Agreement.

17.     Leimkuehler alleged in his Complaint that he accepted the benefits of AUL's services without considering information necessary to analyze the reasonableness of AUL's fees. Leimkuehler further alleged in his Complaint that he breached his fiduciary duty under ERISA by failing to "defray[] reasonable expenses of administering" the Plan. Compl. ¶ 43.

## FIRST CLAIM FOR RELIEF – CONTRIBUTION UNDER ERISA

18.     AUL incorporates by reference the allegations of Paragraphs 1-17 above.

19.     As the named fiduciary of the Plan, Leimkuehler has a duty to conduct himself with the care, skill, prudence, and diligence under the circumstances that a prudent ERISA fiduciary would use in operating and administering the Plan.

20.     Leimkuehler, furthermore, as a co-fiduciary has a duty to ensure that AUL did not breach any fiduciary duty it allegedly had.

21.     If there is a finding in favor of Leimkuehler on any of his allegations that AUL's receipt and retention of payments from mutual fund families somehow violated any alleged duties owed to the Plan and its participants, the resulting harm (if any) to the Plan and its participants was also the fault of Leimkuehler, who breached his fiduciary responsibility to manage and control the assets of the Plan.

22.     Furthermore, if there is a finding in favor of Leimkuehler on any of his allegations that AUL's receipt and retention of payments from mutual fund families somehow violated any

alleged duties owed to the Plan and its participants, then Leimkuehler will have breached his own fiduciary duties under ERISA because he failed to prevent AUL from committing a breach.

23.     Accordingly, AUL is entitled to contribution from Leimkuehler.

## SECOND CLAIM FOR RELIEF – INDEMNITY UNDER ERISA

24.     AUL incorporates by reference the allegations of Paragraphs 1-17 above.

25.     As the named fiduciary of the Plan, Leimkuehler has a duty to conduct himself with the care, skill, prudence, and diligence under the circumstances that a prudent ERISA fiduciary would use in operating and administering the Plan.

26.     Leimkuehler, furthermore, as a co-fiduciary has a duty to ensure that AUL did not breach any fiduciary duty it allegedly had.

27.     AUL did not know that Leimkuehler was negligent and/or in breach of his fiduciary duty with regard to the Plan and its participants, had no reason to anticipate as much, and could reasonably rely on Leimkuehler not to be negligent or in breach of his fiduciary duty with respect to the Plan and its participants.  Any damages to the Plan or its participants were caused by Leimkuehler's conduct and not AUL's conduct.  Therefore Leimkuehler, not AUL is liable to the Plan for any damages.

28.     If there is a finding in favor of Leimkuehler on any of his allegations that the AUL's receipt and retention of payments from mutual fund families somehow violated any alleged duties owed to the Plan and its participants, the resulting harm (if any) to the Plan and its

participants was also the fault of Leimkuehler, who breached his fiduciary responsibility to manage and control the assets of the Plan.

29.     Furthermore, if there is a finding in favor of Leimkuehler on any of its allegations that AUL's receipt and retention of payments from mutual fund families somehow violated  any alleged duties owed to the Plan and its participants, then Leimkuehler will have breached his own fiduciary duties under ERISA because he failed to prevent AUL from committing a breach.

30.     Accordingly, AUL is entitled to indemnification from Leimkuehler.

**THIRD CLAIM FOR RELIEF – COMMON LAW CONTRIBUTION**

31.     AUL incorporates by reference the allegations of Paragraphs 1-17 above.

32.     As the named fiduciary of the Plan, Leimkuehler has a duty to conduct himself with the care, skill, prudence, and diligence under the circumstances that a prudent ERISA fiduciary would use in operating and administering the Plan.

33.     Leimkuehler, furthermore, as a co-fiduciary has a duty to ensure that AUL did not breach any fiduciary duty it allegedly had.

34.     Leimkuehler had the ultimate responsibility for entering into the Amended Contract and Agreement, investing Plan assets, selecting and approving investment options offered to the Plan participants, including any changes to investment options offered to Plan participants, and managing the Plan.

35.     If there is a finding in favor of Leimkuehler on any of his allegations that AUL's receipt and retention of payments from mutual fund families somehow violated any alleged

duties owed to the Plan and its participants, the resulting harm (if any) to the Plan and its participants was also the fault of Leimkuehler, who breached his fiduciary responsibility to manage and control the assets of the Plan by failing to conduct himself with the care, skill, prudence, and diligence under the circumstances that a prudent ERISA fiduciary would use in operating and administering the Plan.

36.     Accordingly, AUL is entitled to contribution from Leimkuehler.

## FOURTH CLAIM FOR RELIEF – COMMON LAW INDEMNITY

37.     AUL incorporates by reference the allegations of Paragraphs 1-17 above.

38.     As the named fiduciary of the Plan, Leimkuehler has a duty to conduct himself with the care, skill, prudence, and diligence under the circumstances that a prudent ERISA fiduciary would use in operating and administering the Plan.

39.     AUL did not know that Leimkuehler was negligent and/or in breach of his fiduciary duty with regard to the Plan and its participants, had no reason to anticipate as much, and could reasonably rely on Leimkuehler not to be negligent or in breach of his fiduciary duty with respect to the Plan and its participants.  Any damages to the Plan or its participants were caused by Leimkuehler's conduct and not AUL's conduct.  Therefore Leimkuehler, not AUL is liable to the Plan for any damages.

40.     Leimkuehler had the ultimate responsibility for entering into the Amended Contract and Agreement, investing Plan assets, selecting and approving investment options offered to the Plan participants – including any changes to investment options offered to Plan participants, and managing the Plan.

41.     If there is a finding in favor of Leimkuehler on any of his allegations that AUL's receipt and retention of payments from mutual fund families somehow violated any alleged duties owed to the Plan and its participants, the resulting harm (if any) to the Plan and its participants was the fault of Leimkuehler, who breached his fiduciary responsibility to manage and control the assets of the Plan by failing to conduct himself with the care, skill, prudence, and diligence under the circumstances that a prudent ERISA fiduciary would use in operating and administering the Plan.

45.     Accordingly, AUL is entitled to indemnity from Leimkuehler.

### FIFTH CLAIM FOR RELIEF – BREACH OF FIDUCIARY DUTY

42.     AUL incorporates by reference the allegations of Paragraphs 1-17.

43.     Leimkuehler alleges in the Complaint that AUL is an ERISA fiduciary of the Plan.  AUL denies in its Answer that it acts or acted as a fiduciary with respect to the Plan.  In the event, however, that AUL is adjudged to be a fiduciary (and it should not be so judged), AUL hereby asserts this claim for breach of fiduciary duty against Leimkuehler.

44.     While AUL is not a Plan fiduciary, to the extent it is held to be a fiduciary of the Plan under ERISA, AUL has standing to bring, and hereby brings, a civil action on behalf of the Plan pursuant to 29 U.S.C. § 1132(a).

45.     As the named fiduciary of the Plan, Leimkuehler has a duty to conduct himself with the care, skill, prudence, and diligence under the circumstances that a prudent ERISA fiduciary would use in operating and administering the Plan.

46.     Leimkuehler, furthermore, as a co-fiduciary has a duty to ensure that AUL did not breach any fiduciary duty it allegedly had.

47.     If there is a finding in favor of Leimkuehler on any of his allegations that AUL's receipt and retention of payments from mutual fund families somehow violated any alleged duties owed to the Plan and its participants, the resulting harm (if any) to the Plan and its participants was also the fault of Leimkuehler, who breached his fiduciary responsibility to manage and control the assets of the Plan by failing to conduct himself with the care, skill, prudence, and diligence under the circumstances that a prudent ERISA fiduciary would use in operating and administering the Plan.

48.     Furthermore, if there is a finding in favor of Leimkuehler on any of its allegations that AUL's receipt and retention of payments from mutual fund families somehow violated of alleged duties owed to the Plan and its participants, then Leimkuehler will have breached his own fiduciary duties under ERISA because he failed to prevent AUL from committing a breach.

49.     Accordingly, Leimkuehler is liable for breach of fiduciary duty to the extent that the Plan or its participants suffered any harm or losses or were deprived of any assets to which they were entitled.

50.     AUL therefore, on behalf of the Plan and its participants, seeks to recover any losses incurred by the Plan and/or its participants as a result of Leimkuehler's breach of fiduciary duty pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2).

AUL reserves the right to amend and/or supplement these Counterclaims in light of further discovery and investigation in this matter and otherwise in the interests of justice.

**WHEREFORE**, Defendant American United Life Insurance Company, having answered the allegations of the Complaint and having set forth its affirmative defenses thereto, respectfully asks this Court to enter judgment with costs against Plaintiff and in favor of AUL.  AUL further requests that the Court enter judgment for AUL on the Counterclaims set forth herein.

Dated:  November 24, 2010                                    Respectfully submitted,

                                                             AMERICAN UNITED LIFE INSURANCE
                                                             COMPANY

                                                             By:  /s/ Sarah H. Newman
                                                                   One of its attorneys

                                                             Robert D. MacGill
                                                             Bart A. Karwath
                                                             Dennis P. Stolle
                                                             Barnes & Thornburg LLP
                                                             11 South Meridian Street
                                                             Indianapolis, IN 46204
                                                             (317) 231-1313
                                                             (317) 231-7433 (fax)

                                                             Joel S. Feldman
                                                             Eric S. Mattson
                                                             Sarah H. Newman
                                                             Sidley Austin LLP
                                                             One South Dearborn Street
                                                             Chicago, IL  60603
                                                             (312) 853-7000
                                                             (312) 853-7036 (fax)