**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ROBERT V. LEIMKUEHLER, as trustee | ) | |
| of and on behalf of LEIMKUEHLER, INC. | ) | |
| PROFIT SHARING PLAN, and on behalf | ) | |
| of all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:10-CV-333-JMS-TAB |
| | ) | |
| v. | ) | Hon. Jane Magnus-Stinson |
| | ) | |
| AMERICAN UNITED LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**AMERICAN UNITED LIFE INSURANCE COMPANY'S**
**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Robert D. MacGill                    Joel S. Feldman
Bart A. Karwath                      Eric S. Mattson
Dennis P. Stolle                     Sarah H. Newman
Barnes & Thornburg LLP               Sidley Austin LLP
11 South Meridian Street             One South Dearborn Street
Indianapolis, IN 46204               Chicago, IL 60603
(317) 231-1313                       (312) 853-7000
(317) 231-7433 (fax)                 (312) 853-7036 (fax)

## TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................1

I.    Statement Of Material Facts Not In Dispute .................................................3

      A.    The Leimkuehler Plan ........................................................................3

      B.    AUL ....................................................................................................3

      C.    AUL's Investment Menu And Plaintiff's Selection Of Investment
            Options ...............................................................................................3

      D.    Changes In The Leimkuehler Plan's Investment Options .....................4

      E.    Mutual Fund Fees ...............................................................................5

      F.    Services AUL Provides To Mutual Funds ............................................5

      G.    Revenue Sharing .................................................................................6

II.   Argument ...................................................................................................6

      A.    Standard Of Review ...........................................................................6

      B.    AUL Is Entitled To Summary Judgment Because Its Conduct In
            Connection With Revenue Sharing Was Not Fiduciary Conduct ............7

            1.    ERISA's Fiduciary Standards ...................................................7

            2.    AUL Did Not Exercise Authority Or Control Over Plan Assets .................8

            3.    AUL Did Not Provide "Investment Advice" As That Term Is
                  Used In ERISA ......................................................................17

Conclusion .............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*American United Life Ins. Co. v. Douglas,*
  808 N.E.2d 690 (Ind. Ct. App. 2004)......................................................................15

*Assocs. in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.,*
  941 F.2d 561 (7th Cir. 1991) ...................................................................................16

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986).................................................................................................6

*Charters v. John Hancock Life Insurance Co.,*
  583 F. Supp. 2d 189 (D. Mass. 2008) .....................................................................16

*Chicago Bd. Options Exchange, Inc. v. Connecticut Gen'l Life Ins. Co.,*
  713 F.2d 254 (7th Cir. 1983) ...................................................................................16

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.,*
  474 F.3d 463 (7th Cir. 2007) ...................................................................................9

*Columbia Air Servs., Inc. v. Fidelity Mgmt. Trust Co.,*
  No 07-11344, 2008 WL 4457861 (D. Mass. Sept. 30, 2008).................................14

*F.W. Webb Co. v. State Street Bank & Trust Co.,*
  No. 09 Civ. 1241, 2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010) ..........................13

*Farm King Supply, Inc. Integrated Profit Sharing Plan & Trust v.*
  *Edward D. Jones & Co.,* 884 F.2d 288 (7th Cir. 1989)...................................17, 18, 19, 20

*Foltz v. U.S. News & World Report, Inc.,*
  627 F. Supp. 1143 (D.D.C. 1986) ...........................................................................18

*Graphic Communication Int'l Union Upper Midwest Local 1-M Health & Welfare Plan*
  *v. Bjorkedal,* No. 04-3371, 2006 WL 3511767 (D. Minn. Dec. 6, 2006).........................10, 15

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.,*
  302 F.3d 18 (2d Cir. 2002).......................................................................................8

*Hecker v. Deere & Co.,*
  556 F.3d 575 (7th Cir. 2009) ............................................................................13, 14, 15, 17

*Johnson v. Georgia-Pacific Corp.,*
  19 F.3d 1184 (7th Cir. 1994) ...................................................................................9

*Nebraska v. Wyoming*,
    507 U.S. 584 (1993) ..................................................................................6

*Olson v. E.F. Hutton & Co.*,
    957 F.2d 622 (8th Cir. 1992) ...................................................................18

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) ..........................................................................1, 9, 17

*Robinson v. Hawk, Inc.*,
    No. 2:09-cv-156, 2010 WL 2162643 (N.D. Ind. May 27, 2010) ..........................10

*Schloegel v. Boswell*,
    994 F.2d 266 (5th Cir. 1993) ...................................................................19

*Schulist v. Blue Cross of Iowa*,
    717 F.2d 1127 (7th Cir. 1983) ...............................................................9, 15

*Walsh v. Principal Life Ins. Co.*,
    266 F.R.D. 232 (S.D. Iowa 2010) ..............................................................14

*Wolin v. Smith Barney Inc.*,
    83 F.3d 847 (7th Cir. 1996) .....................................................................19

*Zang v. Paychex, Inc.*,
    728 F. Supp. 2d 261 (W.D.N.Y. 2010) ....................................................14, 18

STATUTES

29 U.S.C. § 1002(21)(A) ..............................................................7, 8, 16, 17

29 U.S.C. § 1104 .............................................................................................7

29 U.S.C. § 1106 .........................................................................................1, 7

29 U.S.C. § 1113 .............................................................................................16

Ind. Code § 27-1-5-1 .......................................................................................3

OTHER AUTHORITIES

29 C.F.R. § 2509.75-8 ...............................................................................11, 12

29 C.F.R. § 2510.3-21 ...........................................................................17, 18, 19

**Introduction**

Plaintiff has two remaining claims: breach of fiduciary duty (Count I) and engaging in prohibited transactions under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1106(b)(3) (Count II). Both claims require plaintiff, the trustee of a 401(k) plan, to prove that defendant American United Life Insurance Company ("AUL") was acting as a fiduciary when it received "revenue sharing" payments from mutual fund companies. But AUL is **not** a fiduciary; instead, it provides ministerial services like record-keeping and access to 401(k)-friendly investment options. Because plaintiff's claims fail on the "threshold question" of fiduciary status, *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000), AUL is entitled to summary judgment.

* * *

This lawsuit challenges "revenue sharing," an established and widespread practice in the 401(k) retirement services industry. *See generally* Starks Report ¶¶ 10, 16-18 (Dkt. 128-16); Kasten Dep. at 60:1-12 (Dkt. 128-5). When a company wants to offer a 401(k) plan to its employees, it often hires an outside company known as a "service provider" – in this case, AUL – to provide ministerial services for the plan – recordkeeping, communications with plan participants, and the like. Many service providers also provide an additional service: The plan sponsor is given access to a pre-assembled "menu" of investment options from which it can pick a smaller menu to offer employees.

In addition to helping 401(k) plans, service providers assist the mutual fund companies whose funds are on the service provider's "menu." For example, if 401(k) plan participants invested directly in a mutual fund without a service provider as an intermediary, the mutual fund would have to track the daily value and transactions of each individual account. But when a service provider is involved, it provides those recordkeeping services, so the investments of

1

thousands of participants are reflected in a single, omnibus account. Service providers thus receive compensation from the mutual fund companies, with the compensation typically based on a percentage of funds invested. It is this compensation that is known as "revenue sharing."

In this lawsuit, plaintiff Robert Leimkuehler, the trustee of the Leimkuehler, Inc. Profit Sharing Plan ("Leimkuehler Plan" or "Plan"), a 401(k) plan, hired AUL to provide the ministerial services needed to help operate the Plan. Mr. Leimkuehler claims that AUL acted as an ERISA fiduciary and breached its fiduciary duty (and, relatedly, engaged in prohibited transactions) by accepting revenue sharing payments and not handing them over, dollar for dollar, to the Leimkuehler Plan.

The fundamental problem with these claims is simple: AUL is not a fiduciary under ERISA. Plaintiff seems to want this Court to decide this case by asking whether AUL might be a fiduciary for *any* purpose, and if the answer is yes, to evaluate *every* action taken by AUL – including the receipt of revenue sharing – as if it were a fiduciary with respect to *all* aspects of its business. But that is not how ERISA evaluates fiduciary conduct. Under ERISA, it is not enough to show that the defendant was a fiduciary for *some* purpose. Instead, plaintiff must show that the defendant was acting as a fiduciary when taking the action in question. In other words, the defendant must be wearing its fiduciary "hat" when it engages in the challenged activity. This principle is critical to understanding the shortcomings of plaintiff's claims.

Here, the activity in question is receipt of revenue sharing. Thus, to prevail on either of his claims – both of which require as a predicate that AUL acted as a fiduciary – plaintiff must show that AUL's receipt of revenue sharing was undertaken in a fiduciary capacity. He cannot. As detailed below, plaintiff advances four theories about why AUL is a fiduciary, but none of those theories has merit. Accordingly, AUL is entitled to summary judgment.

## I.     Statement Of Material Facts Not In Dispute

### A.     The Leimkuehler Plan

Plaintiff is the trustee and named fiduciary of the Leimkuehler Plan. Dkt. 1 ¶ 1.

### B.     AUL

AUL is an insurance company that, in addition to selling other insurance products, provides services to 401(k) plans and other retirement plans. Its services to retirement plans fall into two broad categories: (1) a means to invest the plan's assets, which in the case of Leimkuehler Plan is a group variable annuity contract, and (2) ministerial recordkeeping and administrative services. Burns Decl. ¶ 3 (Dkt. 128-1); *see also* Dkt. 1 ¶¶ 7-8.

### C.     AUL's Investment Menu And Plaintiff's Selection Of Investment Options

Plaintiff hired AUL in 2000. AUL 373-443, Group Annuity Contract & New Business Agreement (Dkt. 128-11). Through a group variable annuity contract, AUL offered the Leimkuehler Plan a menu of approximately 34 investment options (*id.* at AUL 388), a number that grew over time. *See also* AUL Interrog. Answers (8/18/10) at Exhibit A (Dkt. 128-18) (listing 383 investment options).

The Leimkuehler Plan's investments were made via a "separate account." AUL 375 (§ 1.15) (Dkt. 128-11). In the insurance world, a separate account is just what it sounds like – an account that is kept separate from the insurance company's general account and is therefore beyond the reach of the company's creditors.[1] AUL 412 (§ 9.15) (Dkt. 128-11); Tatum Decl. ¶ 3 (Dkt. 128-3). "In the 401(k) context, a separate account works very much like a mutual fund: Both allow investors to experience the return of underlying securities without having to buy them directly." Tatum Decl. ¶ 4 (Dkt. 128-3). Rather than receiving shares of a mutual fund,

---

[1] The use of separate accounts is authorized by state insurance statutes. *See, e.g.,* Ind. Code § 27-1-5-1 (Class 1(c)).

participants receive "accumulation units" in the separate account. AUL 393 (§ 1.3) (Dkt. 128-11).

In practice, the operation of the separate account is straightforward. An employer collects payroll deductions from plan participants, adds any matching contributions, and then sends those funds to AUL. "Once AUL has received the contributions, it invests them in mutual funds in accordance with directions that plans and plan participants have previously provided." Tatum Decl. ¶ 5 (Dkt. 128-3); AUL 421, Group Annuity Contract Amendment & New Business Agreement (Dkt. 128-11); Yoerger Dep. at 109:2-17 (Dkt. 128-9); AUL Interrog. Answers (8/18/10) at 7 (Dkt. 128-18).

When plaintiff hired AUL, AUL's menu of investment options already existed. In making his initial selection from that menu, plaintiff retained the services of Marco Mazzone, an independent advisor – not an employee of AUL – who provides advisory services to 401(k) plans. Leimkuehler Dep. at 40:5-21 (Dkt. 128-6); Glavin Decl. ¶ 3 (Dkt. 128-2). Over the years, Mr. Mazzone has continued to advise Mr. Leimkuehler about changes to the Plan's investment line-up. Leimkuehler Dep. at 40:5-21 (Dkt. 128-6); Sekerak Dep. at 66:12-22 & 67:2-5 (Dkt. 128-7); AUL 435867, 7/18/2006 E-mail to Robert Leimkuehler and Sharon Sekerak (Dkt. 128-13).

### D.    Changes In The Leimkuehler Plan's Investment Options

After plaintiff selected the Leimkuehler Plan's roster of investment options, he directed AUL to change the investment options under the Plan on at least two occasions. AUL 419, Group Annuity Contract Amendment & New Business Agreement (Dkt. 128-11); AUL 697-703, Investment Election Form (Dkt. 128-12); AUL 3102548-52, Investment Election Form (Dkt. 128-14). Although plaintiff testified that AUL, together with Mr. Mazzone, made recommendations, he agreed that "ultimately, AUL had to hear from you [Mr. Leimkuehler]

4

telling AUL you wanted to make certain changes in investment options before they could be made." Leimkuehler Dep. at 74:10-14 (Dkt. 128-6).

With two exceptions, AUL has never implemented changes to the Plan's investment options except as directed by plaintiff. The first exception occurred in 2000, the second in 2011. Burns Decl. ¶ 13 (Dkt. 128-1); *see also* Welsh Dep. at 42:11-43:17 (Dkt. 128-8) (explaining that AUL does not remove funds from its menu of investment options). Plaintiff was notified of the first change (from one S&P 500 index fund to another) in 2000, but he did not file his lawsuit until 2009. KT 589, 2000 Memorandum to Plan Sponsors (Dkt. 128-15). In the 2011 change, neither the original fund nor the substituted fund paid any revenue sharing to AUL. Burns Decl. ¶ 13 (Dkt. 128-1).

### E.     Mutual Fund Fees

Investing in a mutual fund is not free; the funds charge a fee. This fee is known as an "expense ratio" and is expressed as a percentage of the fund's assets. Starks Report ¶ 13 (Dkt. 128-16). Expense ratios are "not taken from [401(k) plan] participant accounts," but instead are "netted from the investment return at the fund complex." Yoerger Dep. at 84:4-21 (Dkt. 128-9). They are publicly disclosed in mutual fund prospectuses and were disclosed to the Leimkuehler Plan. Starks Report ¶ 13 (Dkt. 128-16); AUL 261-63, 8/7/2002 Fax to Sharon Sekerak (Dkt. 128-10).

### F.     Services AUL Provides To Mutual Funds

AUL performs many of the functions that would otherwise have to be provided by the mutual fund company. Starks Report ¶ 11 (Dkt. 128-16). For example, if a 401(k) plan participant invested directly in a mutual fund, the mutual fund would need to provide recordkeeping services; AUL provides those services instead, relieving the mutual fund company of any such obligations. *Id.* ¶ 14. Similarly, if each individual plan invested directly with a

mutual fund, the mutual fund would have to process each individual purchase and sale. Dkt. 128-16 ¶ 18. However, for plans that invest through AUL, the trades of all plans investing in a single investment option are aggregated and then submitted as a single transaction, thereby reducing the costs to the mutual fund. Starks Report ¶ 18 (Dkt. 128-16).

Part of the mutual fund's expense ratio covers the costs that the mutual fund company would otherwise have to pay to brokers who sell its funds, along with other marketing and distribution costs. In the case of plans that invest through AUL, mutual funds do not incur these costs – those services are provided by AUL. Welsh Dep. at 27:10-22 (Dkt. 128-8).

### G.   Revenue Sharing

Mutual fund companies and their affiliates share revenue with AUL (and almost all other service providers) based on a percentage of the assets invested by plan participants. Starks Report ¶¶ 16-18 (Dkt. 128-16); Kasten Dep. at 60:1-12 (Dkt. 128-5). These payments are made out of the assets of the mutual fund companies. AUL uses revenue sharing to reduce fees that would otherwise be charged directly to plans or participants. Yoerger Dep. at 134:13-19, 139:21-23 (Dkt. 128-9); *see also* Starks Report ¶¶ 20-24 (Dkt. 128-16).

No revenue sharing flows through any AUL separate account. Tatum Decl. ¶ 6 (Dkt. 128-3).

## II.   Argument

### A.   Standard Of Review

Summary judgment should be granted if AUL "shows that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the burden of proof at trial would fall on the non-moving party, the movant is not required to prove a negative, but instead may point to a lack of evidence supporting an essential element of the claim. *Celotex*, 477 U.S. at

322-23. The burden then shifts to the non-moving party to present admissible evidence that raises a genuine issue of fact. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993).

AUL is entitled to summary judgment on both of the remaining counts against it. Plaintiff's remaining claims are predicated on the theory that AUL acted as a fiduciary when it received revenue sharing payments. As explained below, none of plaintiff's theories about AUL's status as a fiduciary has merit.

**B.    AUL Is Entitled To Summary Judgment Because Its Conduct In Connection With Revenue Sharing Was Not Fiduciary Conduct**

To address plaintiff's theories about AUL's alleged fiduciary conduct, we will first describe the standards that govern whether a defendant can be found to have acted as a fiduciary under ERISA, and then will address the theories under which plaintiff contends he can meet those standards.

**1.    ERISA's Fiduciary Standards**

Plaintiff has two remaining claims, both of which arise out of AUL's receipt of revenue sharing: (1) breach of fiduciary duty under section 404 of ERISA, 29 U.S.C. § 1104 (Count I), and (2) engaging in prohibited transactions in violation of section 406(b)(3) of ERISA, 29 U.S.C. § 1106(b)(3) (Count II).[2] To prevail on either claim, plaintiff must show that AUL acted as a fiduciary when it received revenue sharing.

"Fiduciary" is defined in section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). While the definition has three subsections, plaintiff has not alleged that AUL is a fiduciary under the third.

---

[2] This Court previously dismissed Count IV, as well as the portion of Count II asserting a prohibited transactions claim under 29 U.S.C. § 1106(b)(1). *See* Dkt. 63. With respect to Count III, the Court observed that it "asserts no substantive claims, and will survive only in conjunction with the substantive claims that remain." *Id.* at 24.

*See* Dkt. 1 ¶¶ 34-41 (alleging only that AUL is a fiduciary under subsections (i) and (ii)). This brief therefore focuses on the first two subsections.

Subsection (i) provides that "a person is a fiduciary with respect to a plan *to the extent* … he *exercises* any discretionary authority or discretionary control respecting management of such plan or *exercises* any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i) (emphasis added). This addresses two distinct activities: discretionary management of the plan, and management or disposition of the plan's assets. Because the activity at issue in this case involves the investment of assets, the relevant portion of subsection (i) is the part that concerns the management or disposition of plan assets. *See Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir. 2002) (the "management or disposition" language in subsection (i) refers to "common transactions dealing with a pool of assets," including "selecting investments").

Subsection (ii) provides that "a person is a fiduciary with respect to a plan *to the extent* … he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so." 29 U.S.C. § 1002(21)(A)(ii) (emphasis added).

### 2.     AUL Did Not Exercise Authority Or Control Over Plan Assets

#### a.     Key Elements Of Fiduciary Status Under Subsection (i) Of ERISA's Definition Of "Fiduciary"

Subsection (i) makes clear that simply *possessing* authority or control over plan assets is not enough to trigger fiduciary status. Instead, in evaluating whether conduct is fiduciary in nature, three key limitations need to be considered: A defendant is a fiduciary only (a) "*to the extent*" it has authority or control over plan assets, (b) it actually *exercises* that power, and (c)

that power yields authority or control in the sense of permitting the defendant to make decisions about the management or disposition of assets. These limitations are explained further below.

*(i)      The "to the extent" limitation*

ERISA's definition of fiduciary contains an important qualifier: A company is a fiduciary only "to the extent" it exercises authority or control. As a result, plaintiff must show that AUL "was acting in its capacity as a fiduciary at the time it took the actions that are the subject of the complaint." *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 471-72 (7th Cir. 2007); *see also Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1131 (7th Cir. 1983). "In every case charging breach of ERISA fiduciary duty, … the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

The Supreme Court explained this point through a simple example. An employer is often both the plan sponsor and a fiduciary of its 401(k) plan, but only actions that an employer takes in its capacity as a fiduciary can give rise to fiduciary liability. *Id.* at 226-27. Actions the employer takes as a plan sponsor are not fiduciary actions. *Id.* While acting as plan sponsor, the employer may take actions adverse to participants; for example, when it amends the plan to provide less generous benefits. *Id.*; c*f. Johnson v. Georgia-Pacific Corp.*, 19 F.3d 1184, 1188 (7th Cir. 1994) ("people may be fiduciaries when they do certain things but be entitled to act in their own interests when they do others").

The Department of Labor, which has primary responsibility for enforcing ERISA, has issued opinion letters in which it has clarified this point in the revenue sharing context. The Department has stated that even if a service provider acts as a fiduciary with respect to some

9

functions, if it does not act in a fiduciary capacity with respect to revenue sharing, then it can accept revenue sharing payments. For example, in Opinion 97-15A, 1997 ERISA LEXIS 18 (May 22, 1997) (the "Frost Letter"), the Department was asked to determine whether Frost Bank, which acted as a trustee for, and therefore a fiduciary of, certain pension plans, could accept revenue sharing from mutual funds. The bank provided a menu of investment options and, as is the case here, the plans chose which subset of options would be offered to participants. The Department concluded that even though "Frost, as trustee, is a fiduciary" (*id*. at *7), it did not act in a fiduciary capacity when accepting revenue sharing because it did not cause plans to invest in specific mutual funds (*id*. at *12-13). Instead, as here, the decisions about whether to invest in specific funds were left to the plan and its participants.

(ii)     The "exercise" limitation

The relevant portion of subsection (i) not only requires that AUL *possess* control over assets, but also that it *exercise* control. It is not enough for plaintiff to point to a contractual provision that he says *could* give AUL the ability to exercise control over plan assets. *Robinson v. Hawk, Inc.*, No. 2:09-cv-156, 2010 WL 2162643, at *5 (N.D. Ind. May 27, 2010); *see also Graphic Communication Int'l Union Upper Midwest Local 1-M Health & Welfare Plan v. Bjorkedal,* No. 04-3371, 2006 WL 3511767, at *11 (D. Minn. Dec. 6, 2006), *aff'd*, 516 F.3d 719 (8th Cir. 2008) (company officer's veto power over decisions not sufficient to prove fiduciary status where the officer never exercised that authority). Rather, plaintiff must show that AUL actually exercised those powers in a way that controlled the Leimkuehler Plan's investment decisions.

(iii)     The decision-making limitation

In addition to the above limitations, the words "authority or control" mean, both by their terms and by Department of Labor interpretation, that the power at issue must confer decision-

10

making ability with respect to the management or disposition of assets. Carrying out the directions of others is not decision-making and is not authority or control within the meaning of ERISA. The Department of Labor has long held the view that "persons who have no power to make any decisions as to plan policy … practices or procedures," but instead merely perform "administrative functions for an employee benefit plan," are not fiduciaries. 29 C.F.R. § 2509.75-8 (DOL Interpretive Bulletin 75-8, Question and Answer D-2). The Department reiterated this point in the Frost Letter, noting that an entity that merely carries out directions about investing in mutual funds does not exercise authority or control. Frost Letter, at *10-11.

### b.    Application Of Subsection (i) In The Revenue Sharing Context.

The net effect of applying subsection (i) to the facts here, including the three key limitations discussed above, is that plaintiff must demonstrate that AUL – as opposed to plaintiff or the Leimkuehler Plan – exercised control that *caused* the Plan to invest in a *specific* mutual fund. If plaintiff cannot make such a showing, and plaintiff or the Plan was the one that selected the Plan's particular investment options, then AUL's conduct – whatever it may be – does not qualify as fiduciary conduct with respect to the receipt of revenue sharing.

Again, the Department of Labor has emphasized this point in the revenue sharing context. It has issued a trilogy of opinion letters evaluating whether service providers that receive revenue sharing are fiduciaries engaged in prohibited transactions. *See* Frost Letter; Opinion Letter 97-16A, 1997 ERISA LEXIS 17 (May 22, 1997) (the "Aetna Letter"); Opinion Letter 2003-09A, 2003 ERISA LEXIS 11 (June 25, 2003) (the "ABN AMRO Letter"). Although the service providers' business models varied, the theme of the letters is the same: A service provider acts in a fiduciary capacity sufficient to trigger the prohibited transaction restrictions only when it exercises "authority or control to cause a plan to invest in a mutual fund that pays a fee to the [service provider] in connection with the plan's investment." Frost Letter, at *10; *accord* Aetna

Letter, at *10 (analyzing whether an entity "does not exercise any authority or control to cause a plan to invest in a mutual fund"); ABN AMRO Letter, at *16 (no violation "when the decision to invest in such funds is made by a fiduciary who is independent of [the service provider].").

Applying this principle to the facts here makes clear that AUL did not engage in any fiduciary conduct with respect to revenue sharing. As explained below, AUL did not cause the Leimkuehler Plan to invest in particular investment options; instead, plaintiff was the one who selected the options, and the participants, in turn, directed AUL as to how to allocate their money among those options.

### c.    Plaintiff's "Control Over Plan Assets" Theories Are Meritless

Plaintiff's theories about how AUL became a fiduciary are alleged in his complaint and discussed to some extent in his class certification brief and the testimony of his expert. These materials indicate that plaintiff is pursuing three theories as to how AUL allegedly exercised control over plan assets (the fourth theory, regarding "investment advice" under ERISA, is discussed *infra* at 17-20):

- AUL presents a menu of investment options to 401(k) plans, and the underlying investment in each option is a particular share class of a mutual fund chosen by AUL. Dkt. 1 ¶¶ 35(a)-(d) & 36(a)-(d); Dkt. 122 at 21.

- AUL "retain[s] the authority to delete investment options, close them to future investments, or substitute other funds for those an employer had chosen to include in its 401(k) plan without that employer's consent." Dkt. 1 ¶¶ 35(e) & 36(e).

- AUL accepts revenue sharing without disclosing it to 401(k) plan clients and obtaining their approval. Dkt. 1 ¶¶ 35(f) & 36(f).[3]

---

[3] Plaintiff also alleges that AUL became a fiduciary by "providing complete plan management services so that 'plan sponsors don't need to have all the answers, just our phone number to give to their participants.'" Dkt. 1 ¶ 35(g). In addition to being conclusory, plaintiff has never explained how the ministerial services to which he seems to be alluding can possibly be fiduciary in character. *See* 29 C.F.R. § 2509.75-8 (DOL Interpretive Bulletin 75-8, Question and Answer D-2).

As explained below, none of these theories can support a finding that AUL engaged in fiduciary conduct with respect to revenue sharing.

> (i)    *Assembling and offering a menu of investment options*

Plaintiff contends that AUL's assembly of a menu of investment options constitutes fiduciary conduct. Dkt. 1 ¶¶ 35(a)-(d), 36(a)-(d); Dkt. 122 at 21. While this theory fails for multiple reasons, the most obvious is that it cannot be squared with controlling Seventh Circuit precedent, *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir.), *reh'g denied*, 569 F.3d 708 (7th Cir. 2009). In *Hecker*, the court held that a service provider – Fidelity, one of AUL's competitors – did not become a fiduciary by limiting a 401(k) plan's selection of mutual funds to its own proprietary funds. *Id.* Tellingly, plaintiff's expert opined that the facts presented in *Hecker* should have resulted in a finding that Fidelity was a fiduciary. Kasten Dep. at 20:13-18, 21:4-8 (Dkt. 128-5). But of course this Court is bound by Seventh Circuit authority, not the theories of plaintiff or his expert.

*Hecker's* position on this issue, moreover, also has the support of the Department of Labor. In an amicus brief it filed in *Hecker*, the Department evaluated plaintiffs' allegations that Fidelity was a fiduciary because it "exercises discretion in the selection of the investment options the Plans make available to the participants." *See* Brief of Secretary of Labor as Amicus Curiae in Support of Plaintiffs-Appellants, at 22 (Mar. 19, 2008) (Dkt. 128-17), quoting from the *Hecker* complaint. Although the Department supported other positions advanced by plaintiffs, it rejected the theory that "Fidelity Research (or Fidelity Trust) became a fiduciary merely by virtue of developing and presenting a list of investment options to Deere for its selection as a fiduciary." *Id.* at 22-23. (Just as he disagrees with *Hecker*, plaintiff's expert disagrees with this view as well. Kasten Dep. at 83:17-24 (Dkt. 128-5).) Thus, the idea that AUL somehow engaged in fiduciary conduct by assembling a menu of investment options is meritless. *See also F.W.*

13

*Webb Co. v. State Street Bank & Trust Co.*, No. 09 Civ. 1241, 2010 WL 3219284 (S.D.N.Y.

Aug. 12, 2010) (following *Hecker* and finding that service provider did not act as a fiduciary);

*Zang v. Paychex, Inc.*, 728 F. Supp. 2d 261, 270-72 (W.D.N.Y. 2010) (same); *Columbia Air*

*Servs., Inc. v. Fidelity Mgmt. Trust Co.,* No. 07-11344, 2008 WL 4457861, at *5 (D. Mass. Sept.

30, 2008) (finding that service provider did not act as a fiduciary by assembling menu).

Plaintiff may point to his testimony that AUL, along with his independent advisor,

supposedly gave him recommendations about which investment options to pick. Leimkuehler

Dep. at 21:6-15. That would do his cause no good. As the Seventh Circuit observed in *Hecker*,

"There is an important difference between an assertion that a firm exercised 'final authority' over

the choice of funds, on the one hand, and an assertion that a firm simply 'played a role' in the

process, on the other hand." 556 F.3d at 584. Put differently, "functional fiduciary status

pursuant to § 1002(21)(A)'s 'plan assets' clause must involve actual control over the assets at

issue, and therefore, cannot be based solely on an ambiguous degree of influence over another

person who retains control over the assets." *Walsh v. Principal Life Ins. Co.*, 266 F.R.D. 232,

250 (S.D. Iowa 2010). Here, as plaintiff admitted, it was plaintiff, not AUL, who had final

authority over the selection of investment options. Leimkuehler Dep. at 74:10-14 (Dkt. 128-6);

*see also* Kasten Dep. at 16:17-22 (Dkt. 128-5).

Finally, plaintiff's "investment menu" theory fails to account for the fact that AUL

assembled a menu *before* it ever contracted with the Leimkuehler Plan. As a result, at the time

the menu was assembled, AUL could not have had control with respect to the investments of the

Plan. *Zang*, 728 F. Supp. 2d at 272 (citing 29 U.S.C. § 1109(b)). Plaintiff was free to choose not

to contract with AUL if he did not like the investment options on its menu (or for any other

reason). *See Hecker*, 556 F.3d 583 ("a service provider does not act as a fiduciary with respect to

14

the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms"); *Schulist*, 717 F.2d at 1131-32; *cf. American United Life Ins. Co. v. Douglas,* 808 N.E.2d 690, 701 (Ind. Ct. App. 2004) (in connection with the sale of a group annuity contract to a retirement plan, "we agree with the trial court and with AUL that no fiduciary relationship existed here. A fiduciary relationship may not be premised on an arms length transaction resulting in the formation of a contract.") (Indiana law). Moreover, within two years of plaintiff signing up with AUL, AUL began offering a "brokerage window," so that plaintiff had access, if he wished, to virtually every mutual fund in the country, as well as stocks and other investment options. Burns Decl. ¶ 9 (Dkt. 128-1); Glavin Decl. ¶ 6 (Dkt. 128-2); Burns Dep. at 89:16-22 (Dkt. 128-4).

### (ii)      *Ability to delete or substitute funds*

Plaintiff also claims that AUL has the authority to substitute or delete mutual funds from the investment options chosen by the Plan, and that this power makes AUL a fiduciary. Dkt. 1 ¶¶ 35(e) & 36(e). This authority stems from a contract that plaintiff himself agreed to. AUL 377-78, at § 3.3, Group Annuity Contract Amendment & New Business Agreement (Dkt. 128-11). More importantly, with two exceptions (discussed below), AUL has never actually *exercised* any authority under this provision so that the Leimkuehler Plan's investment line-up was altered. This makes all the difference. As one court observed in an analogous context: "[T]he [plaintiffs'] argument boils down to this: [Defendant] *could* have exercised authority and control over plan assets," but "ERISA provides that an officer is a fiduciary only to the extent [that] he … *exercises* any authority or control respecting management or disposition of [plan] assets." *Upper Midwest Local 1-M Health & Welfare Plan,* 2006 WL 3511767, at *11 (citing 29 U.S.C. § 1002(21)(A). In other words, hypothetical control is not the exercise of control, and "could have" is not the same as "did."

15

Admittedly, plaintiff's argument finds support in *Charters v. John Hancock Life Insurance Co.*, 583 F. Supp. 2d 189, 198-99 (D. Mass. 2008), which found that a service provider was a fiduciary because of its "ability to substitute investment options." But *Charters* was incorrectly decided. It ignored the requirement in subsection (i) of ERISA's definition of "fiduciary" that a person must "exercise" authority or control over plan assets in order to become a fiduciary. 29 U.S.C. § 1002(21)(A)(i). ERISA addresses concrete actions, not contractual rights that may or may not be exercised. As the Seventh Circuit observed, "It is important to remember that if [the defendant] is a fiduciary because of the power to amend, this status only governs actions taken in regard to amending the contract and does not impose fiduciary obligations upon [the defendant] when taking other actions." *Chicago Bd. Options Exchange, Inc. v. Connecticut Gen'l Life Ins. Co.*, 713 F.2d 254, 259 (7th Cir. 1983); *see also Assocs. in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.*, 941 F.2d 561, 569 (7th Cir. 1991) (plaintiff's "ability to establish that a defendant is a 'fiduciary' does not aid its cause, for none of [plaintiff's] claims arises out of [defendant's] exercise of this power").

Finally, the two times when AUL substituted one mutual fund for another do not give rise to a viable claim. The first substitution occurred in 2000, *see* Burns Decl. ¶13 (dkt. 128-1), some nine years before plaintiff filed his complaint. As a result, any claim based on this action is barred by ERISA's six-year statute of repose. 29 U.S.C. § 1113(1). And the substitution that occurred in 2011 is irrelevant to a claim based on revenue sharing, because both before and after the change the mutual fund company in question (Vanguard) paid ***no*** revenue sharing to AUL. Burns Decl. ¶ 13 (Dkt. 128-1). Accordingly, neither of these substitutions supports a claim under ERISA.

*(iii)*     *Receiving undisclosed revenue sharing*

Plaintiff's final "control over plan assets" theory is that AUL became a fiduciary by accepting revenue sharing without disclosing it to 401(k) plans and obtaining their approval. Dkt. 1 ¶¶ 35(f) & 36(f). This theory is hard to understand. It does not have anything to do with fiduciary status, particularly since, as *Hecker* teaches and as this Court held earlier in this case, revenue sharing payments are indisputably ***not*** made from plan assets. Dkt. 63 at 18 (citing *Hecker*, 556 F.3d at 584). Instead, this theory appears to be plaintiff's theory about how AUL allegedly *breached* its fiduciary duty. *See* Kasten Dep. at 23:1-8 (Dkt. 128-5); Dkt. 122 at 28 (second bullet point) (asserting that AUL breached its fiduciary duty by failing to disclose revenue sharing). But it is hornbook law that there can be no breach without a duty, and this is as true under ERISA as it was at common law. *See, e.g., Pegram*, 530 U.S. at 226. Accordingly, this theory does not create a genuine issue of material fact as to AUL's alleged status as a fiduciary.

**3.     AUL Did Not Provide "Investment Advice" As That Term Is Used In ERISA**

Subsection (ii) of ERISA's definition of "fiduciary" is triggered when a person "renders investment advice for a fee." 29 U.S.C. § 1002(21)(A)(ii). The Department of Labor has issued detailed regulations interpreting this provision. *See* 29 C.F.R. § 2510.3-21(c). The Department is in the process of amending those regulations, in part because it believes they may unduly limit the universe of possible fiduciaries. *See* 75 Fed. Reg. 65263 (Oct. 22, 2010). However, the existing regulations have repeatedly been cited as authoritative, *see, e.g., Farm King Supply, Inc. Integrated Profit Sharing Plan & Trust v. Edward D. Jones & Co.*, 884 F.2d 288, 291 (7th Cir. 1989) (describing regulations as "unassailed") – including by plaintiff. Dkt. 122 at 22-23.

Under settled law, then, plaintiff must show that AUL "render[ed] advice to the plan as to the value of securities or other property, or ma[de] recommendations as to the advisability of investing in, purchasing, or selling securities or other property." 29 C.F.R. § 2510.3-21(c)(1)(i). Contrary to plaintiff's theory (Dkt. 122 at 23), creating a menu of investment options does not satisfy this provision, any more than it qualifies as "control of plan assets" under subsection (i) of the definition of "fiduciary." *Cf. Zang*, 728 F. Supp. 2d at 270-71 (observing that service provider did not provide investment advice, despite the fact that it gave plaintiff a menu of investment options); 75 Fed. Reg. 65263, 65268 (Oct. 22, 2010) (confirming that even under the expanded definition of "fiduciary," creating a menu of investment options will not, by itself, qualify as "investment advice"). And plaintiff's other theory – that AUL gives investment advice by providing "systematic reviews (with plan fiduciaries) and scoring of the investment performance of plans' investment options" (Dkt. 122 at 23) – cannot be squared with the long-standing rule that providing data about investments is not "investment advice." *Foltz v. U.S. News & World Report, Inc.*, 627 F. Supp. 1143, 1167 (D.D.C. 1986).

Even if plaintiff could clear this threshold hurdle and show that AUL provided "investment advice," in the lay sense of the term, he would also have to prove one of two additional elements. As explained below, he can prove neither.

The first element requires proof that the defendant had "discretionary authority or control" over the purchase and sale of plan assets. 29 C.F.R. § 2510.3-21(c)(ii)(A). This may happen, for example, when a broker trades a client's investments without permission from the client. *See Olson v. E.F. Hutton & Co.*, 957 F.2d 622, 627 (8th Cir. 1992). As the Seventh Circuit has stated in interpreting the relevant Department of Labor regulation, "Those cases which hold that the person or firm was a fiduciary have a common theme conspicuously absent here, *viz.*, the

18

authority to exercise control unilaterally over a portion of a plan's assets, not merely to propose investments." *Farm King Supply*, 884 F.2d at 292. Plaintiff must show, in other words, that AUL caused him to "relinquish his independent discretion in investing the plan's funds and follow the course prescribed by" AUL. *Schloegel v. Boswell*, 994 F.2d 266, 271-72 (5th Cir. 1993).

Here, it is undisputed that, as Mr. Leimkuehler acknowledged, "ultimately, AUL had to hear from you [Mr. Leimkuehler] telling AUL you wanted to make certain changes in investment options before they could be made." Leimkuehler Dep. at 74:10-14 (Dkt. 128-6). As a result, plaintiff, not AUL, had all relevant authority and control.

Nor can plaintiff show fiduciary status under the second element of the Department of Labor's regulations. That requires a showing that (1) AUL made investment recommendations to the Leimkuehler Plan on a regular basis, (2) the investment advice was given pursuant to an agreement with the Plan that AUL would give such advice, (3) the advice served as the primary basis for investment decisions with respect to plan assets, and (4) the investment advice was individualized to the needs of the plan. 29 C.F.R. § 2510.3-21(c)(ii)(B). In other words, AUL must "be rendering advice pursuant to an agreement, be paid for the advice, and have influence approaching control over the plan's investment decisions." *Wolin v. Smith Barney Inc.*, 83 F.3d 847, 849 (7th Cir. 1996); *see also Farm King Supply*, 884 F.2d at 293. Again, however, plaintiff cannot prove that anything like that happened here. To the contrary, plaintiff admitted that he made the ultimate decisions about which investment options to choose, guided primarily by the Plan's independent advisor, Mr. Mazzone. Leimkuehler Dep. at 74:10-14 (Dkt. 128-6); *see also* Sekerak Dep. at 66:12-22 & 67:2-5 (Dkt. 128-7); AUL 435867, 7/18/2006 E-mail to Robert Leimkuehler and Sharon Sekerak (Dkt. 128-13). Nor can plaintiff show any evidence of an agreement on the part of AUL to provide investment advice, as required by the Department of

19

Labor regulations and *Farm King Supply*. Without conceding any other elements of the "investment advice" test, these shortcomings foreclose any theory of fiduciary status based on "investment advice."

In short, plaintiff's investment advice theory fares no better than his "control over plan assets" theory. Because AUL is not a fiduciary, and fiduciary status is a prerequisite to plaintiff's remaining claims, AUL is entitled to summary judgment.

### Conclusion

For the foregoing reasons, AUL is entitled to summary judgment on all remaining counts of plaintiff's complaint.

Respectfully submitted,

AMERICAN UNITED LIFE INSURANCE
COMPANY


By:   /s/ Eric S. Mattson
      _____
        One of its attorneys


Robert D. MacGill
Bart A. Karwath
Dennis P. Stolle
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN 46204
(317) 231-1313
(317) 231-7433 (fax)

Joel S. Feldman
Eric S. Mattson
Sarah H. Newman
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

20

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 1, 2011, a copy of American United Life Insurance

Company's Memorandum in Support of Motion for Summary Judgment was filed electronically.

Notice of the filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.


/s/ Eric S. Mattson
*One of the Attorneys for Defendant*
*American United Life Insurance Company*